Opinion by
 

 Stadteeld, J.,
 

 In the year 1934, the Union National Bank owned a twelve-story steel and concrete building on a corner of Lackawanna and Washington Avenues, Scranton. The ground floor was used as a bank, the upper floors for office purposes. The bank closed and John A. Hart was appointed receiver in February, 1934. The total tax assessment of the building for the year 1934, amounted to $259,150 of which $146,340 represented the land assessment. For the year 1935 the total assessment as first made by the assessors was $277,950, the land assessment being fixed at $130,750 and an increase in the assessment on improvements, accounting for the difference. Upon appeal by the bank, the board of revision and appeal reduced the land assessment to $111,750. The board having refused any further reduction on Jan. 19, 1935, the bank took an appeal to the court below on Feb. 25, 1935. On the following day, notice of the appeal was served upon and accepted by O. G. Chappell, chairman of the board. On July 29, 1936, counsel for the bank’s receiver and the city solicitor, representing the City of Scranton, agreed in writing that a hearing on the appeal was to be held on July 30, 1936 before Leach, P. J. in the court below. On Sept. 3, 1936, the hearing was held, the record revealing that, “By written agreement of counsel filed of record, the case is heard before Hon. Will Leach, P. J. with the same force and effect as though before the court en banc.” Leon M. Levy, Esq. appeared for the bank’s receiver; John R. Edwards, Esq., associate city solicitor, appeared for the City of Scranton; and David J. Reedy, Esq. appeared for the School District of the City of Scranton.
 

 Counsel for the bank’s receiver petitioned the court below for leave to amend the caption of the case to read as follows: “In Re, Appeal of John A. Hart, re
 
 *107
 
 ceiver of the Union National Bank of Scranton, Pa., from revision of assessment of taxes by the City of Scranton for the year 1934, upon Lot No. 26, Block No. 37, Ninth Ward, Lackawanna Avenue, Scranton, Pa.,
 
 this revision having fixed the assessment and amount of taxes for the year 1985, which is herewith appealed for said year 1935.”
 

 The clause in italics represents the portion amending, by addition, the original caption.
 

 Leave to amend the original caption was granted by the court below over the objection of counsel for the City of Scranton and constitutes one of the assignments of error.
 

 The court below entered a decree nisi, fixing the assessment as follows: Land value, $58,220, improvement value, $128,000. Exceptions to the decree nisi were filed but overruled and the decree made absolute. This appeal by the City of Scranton followed.
 

 Appellant contends preliminarily, that the appeal from the tax assessment should have been dismissed by the court below (1) because no notice was given the board of revision of the hearing on the appeal from the assessment, and (2) because the tax appeal was not taken in time to affect the 1935 assessment.
 

 It appears from the record that counsel for the City of Scranton had not only agreed, in writing, to the hearing before the court below, but had also appeared on behalf of appellant throughout the hearing. If there was any failure to give notice, it is clear that such notice Avas waived by attendance at the hearing:
 
 Walberg v. Underwood,
 
 39 Cal. A. 748, 180 Pac. 55; 46 C. J. 552, Sec. 52.
 

 Whether or not the tax appeal was taken in time to affect the 1935 assessment depends on the propriety of the action of the court beloAV in granting leave to amend the original caption of the case. The third averment in
 
 *108
 
 appellee’s petition to the court below from the assessment by the board of revision and appeal clearly sets forth that the 1934 assessment was to be effective for the year 1935. The amendment served merely to remove an ambiguity in the caption so as to conform with the facts as set forth in the body of the appeal.
 

 The word “assessment” is often loosely used to mean the preliminary valuation of the subject matter of a tax by a board of assessors rather than more accurately a certain sum of money fixed under a given rate on property valuation. The preliminary valuation is often made in a year preceding the tax year and hence the source of ambiguity.
 

 “A pleading must be construed as an entirety, including the caption, and a count must be construed as a whole. Effect should be given to every part of the pleading, and all parts will, if the language permits, be so construed as to be consistent with each other ......49 C. J. 116, Sec. 108;
 
 Intercoastal Lumber Distributors, Inc. v. Derian et al.,
 
 117 Pa. Superior Ct. 246, 248, 178 A. 350: “The title of the action should not be allowed to control the averments of the complaint”: 49 C.J. 117 Sec. 108.
 

 The sole question remaining for consideration is whether or not the tax appellant in the court below met the burden of proving the incorrectness of the tax assessment by competent evidence. The court below in the decree, fixed the value of the bank’s land and building as follows: land value, $58,220; improvement value, $128,000, making a total of $186,220.
 

 “It should be remembered, that when the cases came into the court of common pleas on the appeal the proceedings were de novo and a prima facie case was made out by the appellees when the valuation of each tract and the data affecting the same on record in the office of the board of revision, were offered in evidence.
 
 *109
 
 The burden was then on appellant to show by the weight of evidence that the valuation was unjust, inequitable, not uniform in comparison with the valuation of other real estate in the district, and not made on a proper legal basis
 
 ......Phila. & Reading Coal & Iron Co. v. Northumberland County Commissioners,
 
 229 Pa. 460, 468, 79 A. 109.
 

 From the documentary evidence taken from the records of the assessors, the following facts appeared: (1) the assessed value per front foot of appellee’s property had been fixed at the rate of $2,598.33 for a lot about ninety-one feet deep; (2) the assessed land value per foot front for a lot one hundred and thirty-three feet deep, immediately adjoining appellee’s property, had been fixed at $1,473; (3) the uniform value per foot front of lots, one hundred and thirty-three feet deep, in the block in which appellee’s property was located, had been fixed at amounts varying from $1,473 to $1,501; (4) properties on an adjoining lot testified to as being a much more valuable location, had been assessed a value per front foot of $2,784 and $2,996.
 

 Oral testimony was supplied by witnesses for both sides. One expert witness called by appellant testified that in his opinion, the assessment as originally fixed for appellee’s property in 1935, was fair, but that the assessments for other properties in the same block was “too low”. This evidence suggests the absence of uniformity of assessments. He testified further that the total value of appellee’s property in 1935 was $284,000, the market value of the land being $126,000 and the improvements being $158,000. This opinion was based, in part, on the original cost, less depreciation, and, in part, on his knowledge of sales of comparable properties in the same block. It seems that the sale of one property, 25 feet by 133 feet, was negotiated under a contract entered into in 1924, the consideration being
 
 *110
 
 $113,000. After a series of assignments of the contract, it was eventually consummated in 1930 upon the same consideration by a delivery of a deed signed by the original vendor of 1924 to the ultimate purchaser of 1930. A sale of an adjoining property, 25 feet by 133 feet, was made in 1927, the consideration being $125,-000. There were no more recent sales.
 

 Another expert witness called by appellant, testified that in his opinion, the total market value of appellee’s property in 1935 was $239,283, the value of the land being $104,980 and the improvements being $134,303. This opinion was based on the replacement value of the property less depreciation and considering a fifty per cent depreciation of property due to the general fall in prices from 1930 to 1935. He concluded that the property should have been assessed at $168,000 figuring the assessed value at seventy per cent of the market value in accordance with the then current rate of assessment.
 

 Appellee placed two witnesses on the stand. One testified that in his opinion, the assessment of appellee’s property should have been fixed at $1,841.25 per foot front, applying the value per foot front established by the assessment on neighboring properties having a one-hundred and thirty-three foot depth. The other testified that the assessment should have been fixed at $1,381 per foot front for appellee’s ninety-one foot property. On the question of market value, the former was of the opinion that the total market value of appellee’s property in 1935 was $140,000, the value of the land being $40,000 and the value of the improvements being $100,000; the latter expressed the opinion that the total market value in 1935 was $125,000, the value of the land being $35,000 and the value of the improvements being $90,000. The qualifications of both witnesses as expert realtors was admitted prior to their giving testimony. Both witnesses based their opinions
 
 *111
 
 on the current “bid and ask” quotations for various properties within the same block as appellee’s property and within the adjoining block.
 

 The legislature has fixed market value as the basis for the assessment of property, and market value has been defined as “the price which a purchaser, willing but not obliged to buy, would pay an owner, willing but not obliged to sell, taking into consideration all uses to which the property is adapted and might in reason be applied”:
 
 Lehigh & Wilkes-Barre Coal Co’s. Assessment,
 
 298 Pa. 294, 300, 148 A. 301.
 

 “Ordinarily, this [fair market value] can be shown by witnesses who have knowledge of the values of property similarly situated and available for like use, and opinions based on sales of such are admissible to establish the worth of the one in question:
 
 Marine Coal Co. v. R. R. Co.
 
 246 Pa. 478, 492. Testimony of this sort is not limited to experts but may be given by others not so qualified, who are familiar with the land involved and its surroundings:
 
 Hoffman v. Coal Mining Co.,
 
 265 Pa. 476. Even if but one sale of similarly situated property is known, the witness is not necessarily incompetent to testify
 
 (Rea v. Pittsburgh Ry. Co.,
 
 229 Pa. 106), and opinions may be received, if based on the general selling price in the community
 
 (White v. Western Allegheny R. R. Co.,
 
 222 Pa. 534;
 
 Curtin v. R. R.,
 
 135 Pa. 20;
 
 P. R. R. Co. v. Vance,
 
 115 Pa. 325), or on the sums at which like properties are held:
 
 Friday v. P. R. R. Co.,
 
 204 Pa. 405;
 
 Fessler v. S. H. G. & W. Co.,
 
 69 Pa. Superior Ct. 331”:
 
 Appeal of Pennsylvania Co. for Insurance- on Lives and Granting Annuities,
 
 282 Pa. 69, 74, 127 A. 441.
 

 Whenever the fair market value can be ascertained by sales of lands of like quality, similarly situated, or by recent sales of the lands being assessed, the statutory rule contemplates this method of establishing market
 
 *112
 
 value. If, however, there were no sales from which the general selling price might be ascertained, the market value may be established by the testimony of persons acquainted with the property, and whose knowledge and experience qualify them to form an intelligent judgment as to its proper valuation:
 
 Phila. & Reading Coal & Iron Co. v. Northumberland County Commissioners,
 
 (supra), at p. 467. Likewise, where, as in the instant case, it is clear that the sales testified to, have not been of so recent a date as to afford a proper standard of comparison, the market value may be established by the testimony of persons acquainted with the property, and whose knowledge and experience qualify them to form an intelligent judgment as to its proper valuation :
 
 Phila. & Reading Coal
 
 &
 
 Iron Co. v. Northumberland County Commissioners,
 
 323 Pa. 185, 191, 186 A. 105.
 

 The court below received the evidence not only with a view to the determination of the question of proper valuation, but also of the question of uniformity of assessment. In this respect, it acted clearly within its power:
 
 Delaware, Lackawanna & Western Railroad Co.’s Tax Assessment (No. 1),
 
 224 Pa. 240, 246, 73 A. 429. That case suggested, at p. 244, that, “......the valuation of the property of one owner is so clearly related to the valuation of the property of all other owners, in the same district that the court must be advised as to the general valuation of other properties in order to determine what is a just and uniform valuation of the property in question.” And, in accordance with the principle contained in the case of
 
 Mineral Railroad & Mining Co. v. Northumberland County Commissioners (No. 1),
 
 229 Pa. 436, 78 A. 991, at p. 452, that “......courts in determining the valuation of a particular tract or tracts, from the assessment of which an appeal is taken, must have due regard to the valuation
 
 *113
 
 and assessment of other real estate in the same district,” the court below arrived at its conclusion.
 

 Prom the expert testimony of the witnesses and from the documentary evidence taken from the records of the assessors, the court below concluded that appellee had fully met the burden of proving that the assessment was neither just nor uniform with assessments of neighboring properties, but on the contrary was clearly excessive.
 

 While the weight of the evidence is before the appellate court, and it is the duty of this court to pass upon the findings of fact and conclusions of law of the court below, such findings will not be disturbed unless there is error in the ultimate determination:
 
 Hudson Coal Co.’s
 
 Appeal, 327 Pa. 247, 193 A. 8.
 

 The court below, with a view to uniformity of assessment and proper valuation, reduced the assessed value and nothing appears in the record to disturb that conclusion.
 

 The assignments of error are overruled and appeal dismissed.