Lynch *v.* Owen J. Roberts School District, Appellant.

Argued March 15, 1968.  Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Fred T. Cadmus, III,* with him *John E. Good* and *Miles Warner,* for appellants.

*Arthur A. Moorshead,* with him *Moorshead & Niccolo,* for appellee.

*Lawrence Sager,* for appellee.

*A. Thomas Parke, III,* for appellees.

OPINION BY MR. JUSTICE ROBERTS, July 1, 1968:

These three appeals, consolidated by the court below, arise from three complaints in equity seeking to enjoin appellant, a third class school district, from collecting occupation taxes assessed and levied by it against appellees, three attorneys-at-law, and an employee of a carpet manufacturing company. The chancellor found in favor of the taxpayers, granted the injunction, and, following dismissal of its exceptions by the court en banc, the school district took these appeals.

The undisputed facts reveal that in 1965 appellant, acting under authority of the so-called "Tax Anything Act," Act of June 25, 1947, P. L. 1145, §1 et seq., as amended, 53 P.S. §6851 et seq., by resolution enacted an occupation tax pursuant to which the occupations were valued by the school district's tax director. Appellees were taxed, and paid the requested amounts. In 1966, the tax was reenacted without substantial change under authority of the new "tax anything" act,

known as The Local Tax Enabling Act, Act of December 31, 1965, P. L. 1257, §1 et seq., 53 P.S. §6901 et seq. (Supp. 1967).[1]  Appellees refused to pay any occupation tax under this new school district enactment.  When appellant attached appellees' wages to compel payment, appellees sought relief in equity.

In the court below appellees launched several attacks upon the occupation tax.  They argued (1) that the tax was violative of the Uniformity Clause of the Pennsylvania Constitution, Article IX, §1 in that it valued a specific occupation at varying rates depending on age, sex, experience, and days per week spent at work;[2] (2) that the tax was unconstitutional as being an unlawful delegation of legislative power to an administrator; (3) that the tax was actually a disguised income tax and as such violative of certain state statutes; and (4) that the tax violated state law because it permitted the school district tax director, rather than the chief county assessor, to place a value for tax purposes upon occupations themselves.  In dismissing appellant's exceptions to the chancellor's decree nisi, the court below specifically held that the occupation tax violated the uniformity clause and that the valuation of occupations could not be made by the school district tax director.  We agree with the

---

[1] The relevant provisions of the new The Local Tax Enabling Act are identical to those of the 1947 "Tax Anything Act."

[2] More specifically, the ordinance exempts completely from taxation individuals, regardless of occupation, who are over 72 years of age; under 21 years of age; work at their trade less than two-fifths of a week; or who are over 65, retired and earning less than maximum social security benefits. "Lawyers" as an occupation for example, are given one of six different valuations:  in practice less than five years (male), $8,000; less than five years (female), $6,000; five to seven years in practice (male), $11,000; five to seven (female), $8,300; more than seven years in practice (male), $13,000; more than seven years (female), $10,000.

latter conclusion and so affirm the decree below without reaching appellees' other contentions.[3]

Before turning to a discussion of this valuation issue, however, we must first consider appellant's argument that the court below lacked jurisdiction over the subject matter of the suit. The school district points to a section of the 1947 "Tax Anything Act," §3 (53 P.S. §6853), and to a corresponding section of the 1965 act, §6 (53 P.S. §6906), both of which establish a statutory appeal route for challenging this occupation tax. The district argues, therefore, that equity is without jurisdiction to enjoin the enforcement of a tax not challenged at law under the applicable statute. While we agree with the general proposition that equity will not entertain an action where plaintiff has an adequate, statutory remedy at law, we also acknowledge the presence of an exception to that doctrine, existing where a taxing statute is made the subject of a *constitutional* challenge.

"The teaching of our case law is that, where the controversy involves a challenge to the constitutional validity of a taxing statute or ordinance, such a controversy falls within the general class of cases wherein equity does have jurisdiction and competency to act. [Citations omitted.]" *Studio Theaters, Inc. v. Washington,* 418 Pa. 73, 79, 209 A. 2d 802, 805 (1965). See also, *Philadelphia Life Ins. Co. v. Commonwealth,* 410 Pa. 571, 190 A. 2d 111 (1963); *Young Men's Christian Assoc. v. Reading,* 402 Pa. 592, 167 A. 2d 469 (1961) (dictum); cf. *Blue Cross Appeal,* 416 Pa. 574, 209 A.

---

[3] Our decision to resolve this case on non-constitutional, rather than constitutional, grounds accords with the established rule that a constitutional question will not be passed on unless absolutely necessary for a resolution of the controversy. See *Shuman v. Bernie's Drug Concessions,* 409 Pa. 539, 187 A. 2d 660 (1963); *Rupert v. Policemen's Relief and Pension Fund,* 387 Pa. 627, 129 A. 2d 487 (1957).

2d 799 (1965). Moreover, that this rule applies even in cases where there is a *specific* statutory remedy at law is shown clearly by *Studio Theaters,* a case involving the very statute at issue today, the "Tax Anything Act" of 1947. Finally, we note that the equity court, having once obtained jurisdiction because of the presence of a constitutional challenge to a taxing statute, may also dispose, as did the lower court here, of non-constitutional challenges as well. This procedure was followed in *Plymouth Lanes, Inc. v. Plymouth Twp.,* 82 Montg. Cty. L. Rep. 281 (C.P. 1963) where the chancellor passed on taxpayer's constitutional *and* non-constitutional arguments, concluding simply that "[e]quity has jurisdiction of the parties, the subject matter, and this cause of action." Id. at 287. The case was affirmed by this Court as to the chancellor's findings on the constitutional as well as non-constitutional issues. See *Plymouth Lanes, Inc. v. Plymouth Twp.,* 415 Pa. 206, 202 A. 2d 811 (1964). Since it is undisputed that the present case involves, inter alia, a constitutional challenge to the district's occupation tax, we agree with appellees that the court below had jurisdiction.

Turning now to a discussion of the merits of this appeal, we are confronted with the following issue: Under the relevant taxing statutes, may the school district value the various occupations to be taxed, or must this valuation be performed only by the county assessor? The controversy centers about the proper meaning to attach to the word "assess," for the language of various legislative pronouncements gives the power to "assess" at one point to the county assessor, yet at another to the local taxing body, in this case the school district.

In order to better appreciate the following discussion, we shall first set out the crucial language of the

three statutes here involved. 1. In 1943, the Legislature declared: "It shall be the duty of the chief assessor [i.e., county assessor] to assess, rate and value all subjects and objects of local taxation, . . ." Act of May 21, 1943, P. L. 571, §602, as amended, 72 P.S. §5453.602(a). 2. In 1947, the "Tax Anything Act" was passed with this provision: "The duly constituted authorities of . . . school districts of the third class . . . may . . . levy, assess and collect or provide for the levying, assessment and collection of . . . taxes . . . on . . . occupations. . . ." Act of June 25, 1947, P. L. 1145, §1, as amended, 53 P.S. §6851. 3. Finally, in 1965, the "Tax Anything Act" of 1947 was given a new face, and a new title, "The Local Tax Enabling Act," although the language germane to this discussion was left unchanged. Act of December 31, 1965, P. L. 1257, §2, 53 P.S. §6902 (Supp. 1967).

Although our semantic discussion must center about the word "assess," we note initially that the controversy really involves the "valuation" of property (more precisely occupations), i.e., given the fact that a certain item is a proper subject for taxation, how much is that item worth? We must decide whom the Legislature directed to place a value on an occupation for purposes of taxing this occupation. Little help is received from examining the dictionary definition of the word "assess," except to note that the word is defined by Webster's International Dictionary to mean, inter alia, either the valuation of property for purposes of taxation or the determination of the actual amount of tax owing on that property. This latter task, a ministerial computation whereby the taxing authority couples the value of the property or occupation to be taxed with the percentage or millage of the tax itself to determine the exact amount due from the taxpayer, is not here at issue, since all the parties concede that this function *may* be performed by the school district.

The parties lock horns however on the valuation aspect of the word "assess," the district claiming that "assess" as used in the "Tax Anything Act" means to place a value on property, the taxpayers arguing that it means only to compute the amount of tax owing on that property. Taxpayers, of course, claim that the *valuation* of the property can be done only by the county assessor. We agree with the taxpayers that the word "assess" as used in both The Fourth to Eighth Class County Assessment Law of 1943 (taxpayers live in Chester County which is a fourth class county) and the "Tax Anything Acts" of 1947 and 1965 means merely to compute the amount of tax due and does not include the task of valuing the objects of taxation.

If we examine the language of the County Assessment Law, it appears that the county assessor shall "assess, rate and value" the *subjects* of taxation, i.e., he must, in the present case, value the *occupation*. On the other hand, the school district is empowered by the "Tax Anything Act" to "levy, assess and collect" *taxes*. It can therefore be easily seen that if "assess" as used in the "Tax Anything Act" meant "value" rather than "compute" the language would be nonsensical, for one cannot "value" a tax. One can only "levy" a tax, "compute" a tax, and "collect" a tax. On the other hand, no such problem exists with the language of the County Assessment Law. If we ascribe to *its* language the "computation" meaning of "assess," the statute still makes sense. For it *is* grammatically correct to compute the amount owing on a given "subject" of taxation; and in fact this task is frequently done by the county assessor in the case of county-wide taxes. Thus, the word "assess" can mean the act of computing an amount due, and make sense in *both* statutes; however, for the word to mean the act of valuation, one

must ascribe an absurd meaning to the language of the "Tax Anything Act."

Moreover, only in the County Assessment Law does the actual word "value" appear. From this we may draw two conclusions. The first is that the Legislature meant to indicate clearly that valuation of property was a function of the county assessor. The second is that "assess" cannot mean "value" as used in the County Assessment Law; for to so define the word, we would have to hold that the Legislature intended the word "value" itself, also appearing in the same clause, to be mere surplusage, or vice versa. It is a well established doctrine of statutory construction that a statute must be read to give effect to *all* of its language. *Whitemarsh Twp. Auth. v. Elwert,* 413 Pa. 329, 196 A. 2d 843 (1964); *Daly v. Hemphill,* 411 Pa. 263, 191 A. 2d 835 (1963); Act of May 28, 1937, P. L. 1019, §51, 46 P.S. §551. And the Legislature is presumed not to have intended its laws to contain surplusage. *Daly v. Hemphill,* supra; *Commonwealth v. Mack Bros. Motor Car Co.,* 359 Pa. 636, 59 A. 2d 923 (1948). Having thus concluded that "assess" could not mean value as used in the County Assessment Law, we do not think it advances the cause of logic or justice to give that word a different meaning when used in a closely related statute, the "Tax Anything Act," especially when those two statutes, as evidenced by the present controversy, frequently arise together in connection with the same taxing ordinance.

Finally, although admittedly sparse, there is some case authority for the proposition that "assess" does not mean the valuation of taxable subjects, but rather the computation of the tax due on these subjects. As was said in *Hart's Appeal,* 131 Pa. Superior Ct. 104, 108, 199 Atl. 225, 227 (1938): "The word 'assessment' is often loosely used to mean the preliminary valuation of the subject matter of a tax by a board of assessors

rather than more accurately a certain sum of money fixed under a given rate on property valuation."

We therefore hold that the "Tax Anything Acts" of 1947 and 1965 permit the school district to pass an occupation tax (levy), compute the amount owed by each taxpayer (assess) and secure the tax revenue itself (collect). But this school district cannot place its own value on the occupations to be taxed. This may be done only by the county assessor, who bears the responsibility for valuing all the subjects and objects of taxation in his county. We believe that public policy is better served by insuring that a subject of taxation, be it property, occupation, or any other legitimate taxable, have but a single value fixed to it— and this requires a single valuing officer. It follows that, in the present case, since appellees' occupations were not valued by the county assessor, but instead by the school district's tax director, appellant was properly enjoined from collecting its tax.

Decree affirmed. Each party to pay own costs.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.

———

CONCURRING OPINION BY MR. JUSTICE JONES:

The majority of this Court hold that this School District was properly enjoined from collecting this occupation tax because the value placed on the occupations to be taxed was to be fixed by the School District Tax Collector rather than the Chief County Assessor. With that position I agree.

In my view, however, this Court should have come to grips with appellees' argument that the tax violated the uniformity clause of Article IX, §1, of the Pennsylvania Constitution in that it sought to value a specific occupation at varying rates depending upon such factors as age, sex, experience and days per week spent at work. I believe that the tax sought to be

levied directly violates our Constitution and is clearly invalid. I regret that this Court has not seen fit to meet this constitutional issue and to declare the method of taxation constitutionally offensive.

———

DISSENTING OPINION BY MR. JUSTICE COHEN:

For the reasons stated in my dissenting opinion in *Studio Theaters, Inc. v. Washington*, 418 Pa. 73, 80, 209 A. 2d 802 (1965), I disagree with the majority that the court below had the power to entertain an action in equity where plaintiff has an adequate, statutory remedy at law.

I dissent.