**Campbell v. Coatesville Area School District**

*John Talierco* and *John Stively*, for plaintiffs.

*Milton Apfelbaum* and *Franklin Gordon*, for defendants.

RILEY, J., June 2, 1969.—

## PLEADINGS AND ISSUES

Plaintiffs aver in a complaint filed in equity, that they are adult taxpayers within the Coatesville area School District in this county and allege the suit to be brought on behalf of themselves and all other taxpayers. Defendants are the school district and the tax

collectors of the several townships situate within the district and the complaint seeks an injunction against the collection of an occupation tax enacted by the district. While a number of grounds are averred to sustain a right to injunction, the grounds pressed by plaintiffs and placed in issue at the trial and argument are the following:

1. The classifications of occupations established in the ordinance are too broad and lacking in definite standards of differentiation.

2. The chief assessor did not "certify" lists of persons and their occupational assessments to the local boards.

3. The assessment of the occupational evaluations was not made by the chief assessor.

4. The chief assessor unlawfully delegated authority in allowing the local assessors to obtain "enumerators."

5. The anticipated revenue to be obtained was estimated from the "per capita" lists only before the tax resolution was passed and the actual enumeration was made by census takers.

6. The census takers in fact omitted persons under 21, over 65, and with incomes of less than $600 creating a "de facto" lack of uniformity in violation of the Pennsylvania Constitution and hence the tax was "unconstitutional."

### FINDINGS OF FACT

1. After advertising intent to so do the directors of the Coatesville Area School District adopted a resolution imposing an "occupation" tax upon all residents in the district at the rate of 250 mills upon the assessed valuation of the occupation of each resident in the district.

2. In formulating the budget and anticipated revenue required and to be obtained from the tax the directors used the per capita tax duplicates as a guide

to estimate revenue to be derived from an occupational tax.

3. The chief assessor, at the request of the district after the tax resolution was enacted, caused an occupational census to be taken of the whole district by soliciting the aid of local tax assessors and enlisting the aid of various "census takers" throughout the area, listing the names of the persons within the area who had occupations and the type of occupation of each and the enumeration was then returned to the chief assessor through the several local assessors.

4. The enumerators or census takers and local assessors took the census as servants, agents, and employes of the chief assessor of the county.

5. The enumerators or census takers listed the various persons within the district, their occupations, and an assessed value was entered according to the assessed value of the occupation, as established by the chief assessor, by the local assessor or enumerator according to an assessment of occupation schedule determined by the chief assessor for the entire county. The classifications were reviewed by the local and chief assessor and changes made as they deemed proper.

6. The chief assessor's office assessed all occupations in five categories valuations, to wit:

*Coatesville Area School District*
*Occupational Tax*
*Classification and Assessment*

*Professional* $600

Definition: Classification requires scholarship and learning; it connotes the idea and ideal of serving others, even though its primary aim is the earning of a livelihood.

Examples: Doctors, lawyers, graduate engineers, president or vice president of an industrial or commercial firm, undertaker, CPA.

*Managerial*                                          $400

Definition: Those engaged in conducting or controlling; administration; skillful direction.

Examples: Manager of an enterprise (store, contracting business, garage), sales manager, broker, accountant, executive, engineer, merchant.

*Skilled Labor*                                       $300

Definition: Those skillful in an art or craft, or having technical training of a specialized type. Knowledge of an art or science combined with its technique.

Examples: Brick or stonemason, carpenter, machinist, plumbers, electrician, auto mechanic, chefs, bakers, teachers, secretarial, accountant.

*Laborers*                                            $200

Definition: Those wage-earning workers who do physical work as distinguished from those who are doing mental work.

Examples: General unskilled laborers, waitresses, helpers in the trades, handyman, road workers, maid, clerk, farmer.

*Unemployed*                                          None

Retired, housewife, disabled, unemployed.

7. No exemptions were included in the tax resolution.

8. The lists compiled by the census takers or enumerators, comprising in excess of 15,000 persons, were turned over to the local assessors who, in some instances at least, made corrections, and in turn forwarded them to the chief assessor's office where they were reviewed and tax duplicates compiled and given to the district with the assessed valuation of each person's occupation on the list. The lists returned to the district were not "certified" by the chief assessor.

9. Each person on the various lists was notified of his or her assessment together with notice of right to appeal.

10. Eight hundred and seventy-five appeals were taken and many assessments were adjusted as a result of those appeals. There were no appeals taken to the courts of this county.

11. The revenue estimated to be derived from the tax is $625,000.

12. The parties plaintiff are residents and taxpayers within the Coatesville Area School District.

## DISCUSSION

We have carefully reviewed the contentions of plaintiff, both factual and legal, and find no merit therein. Treating, first of the breadth of the occupational classifications, we do not find them so vague and indefinite as to render the assessments unconstitutional. It was and is the duty of the chief assessor to evaluate the assessment of value of occupations within the county for tax purposes; Lynch v. Owen J. Roberts School District, 430 Pa. 461. Conceivably, there might be an enumeration of one hundred or a thousand occupations in an effort to list every conceivable classification of employment ranging from a steam fitter to a steam fitter's helper to a taxi driver, part time and full, and almost ad infinitum. There might be a classification of occupations in broad classes or categories as here. The classes of occupations here assessed were four in number, professional, managerial, skilled labor and unskilled with definitions appropriate to each. The issue of the broad classification of occupations was squarely presented in Treaster v. Union Township, 430 Pa. 223, in which the taxpayers asserted that a classification of three broad areas of occupation was too vague, and the lower court held to the contrary with specific approval of the Supreme Court. Certainly there will always be difficulty in allocating one individual into one class of occupation or another and there are, undoubtedly, borderline areas and will be differences of opinion no matter how

broad or particular the occupational classes may be. The allocation may arise from the totality or scarcity of information provided by the individual or from the judgment of the person making the allocation, and it is for the very purpose of correction of administrative errors that an appeal procedure is provided. Were no appeal procedure available to rectify errors, plaintiffs might well complain. But there is such procedure and such was effectively followed by many persons who felt they had been erroneously placed in one or another category or were assessed in a wrongful manner. Difficulty of administration or of enforcement is not the criteria of constitutionality or validity as long as an adequate remedy is provided and available to rectify errors. The errors of the chief assessor, which are bound to occur in small or even large number, are correctible and were so corrected on appeal, the very reason for which the appeal procedure is provided.

Plaintiffs complain that there was no "certification" by the chief assessor upon the lists returned to the school district. While the law requires the chief assessor to "certify" the lists of persons subject to tax to the respective tax bodies of the county, we find no basis in law or reason to conclude that if he does not do so the tax resolution of the taxing authority should be "invalid." Plaintiffs have pointed to section 675 of the Public School Code of March 10, 1949, P. L. 30, art. 6; 24 PS §6-675, as requiring a certified list "In order to enable the board of school directors in school districts of the second class to levy and assess. . . ." We might first comment that the word "enable" does not refer to legally "enable" but to the physical necessity of having proper information and a designation of the source required by law to provide such information. In the case before us, the lists were compiled and assessments made by the chief assessor and distributed to the tax bodies. Whether the lists

bore a worded "certification" is of form and not substance, and not material to the validity of the tax resolution following therefrom. We find no merit in this contention of plaintiffs.

Plaintiffs next contend that the chief assessor did not make up the lists or make the assessments. We cannot believe plaintiffs contend, as they appear to argue, that the individual person who is chief assessor must do everything all by himself, a virtual one-man office and department. There just is no doubt under the clear facts of this record that the chief assessor enlisted the aid of local assessors and enumerators who took a "census" for and on his behalf and were paid by him through the county, and that he reviewed the lists compiled and turned them over to the school district. All persons who worked as census takers or allocated persons to one class or another were acting as agents and servants of the chief assessor and we find such as a fact clearly established by the evidence before us. Without laboring the point, both the code and reason dictate that the chief assessor must act through agents and servants and that he, personally, need not do each and every act involved in the functions of his office. Suffice to say the lists prepared were in fact and effect lists prepared by and under the direction and control of the chief assessor of the county. The assessment of the occupations was made by the chief assessor as required by law. His assistants performed the field work of enumeration and placing them in the category of occupation.

We have treated of the defects in assessment procedures complained of merely to point out the total lack of merit even if now raisable. While it was argued that the Lynch, supra, decision decided that equity might provide the forum to declare invalidity of tax procedures if a constitutional question is raised, we cannot believe the Supreme Court meant

to hold that a special legal remedy provided by the legislature need not be followed merely by "alleging" a "constitutional question" even if the time limitations upon the legislated remedy has expired. We do not see that question raised or determined in the Lynch case. The legislature has provided a remedy to attack the "validity" of a tax resolution under the Local Tax Enabling Act of December 31, 1965, P. L. 1257, sec. 6, 53 PS §6906, by establishing a right to appeal the resolution to the court of quarter sessions within thirty days after enactment, much the same as the remedy provided to attack township ordinances. Although the language of the Lynch case seems sufficiently broad to support the plaintiffs' contention, we do not feel the issue of validity of the "assessment" raised in the Lynch case fell within the scope of the legislatively created remedy and time limitation. There would seem no reasonable basis to permit the resurrection of a remedy or creation of a new one by the simple process of "alleging" a constitutional issue, and we do not believe the Supreme Court intended to so hold in the Lynch case. However, we have nonetheless treated of all objections whether pertaining to validity or not, because of breadth of language employed by the appellate court in the Lynch case.

In this vein, the contention that the resolution was passed with anticipated revenue based solely upon estimates of income derived from per capita lists falls clearly within those matters relating to the "validity" of the tax resolution as opposed to its "unconstitutionality" and we would deem that such issue must be raised by way of appeal within thirty days of the passage of the resolution and in the manner legislatively mandated. Plaintiffs contend, however, that because they choose to "allege" constitutional issues months later the issue of validity is ipso facto resur-

rected in the equity proceeding. We do not believe it is so or that such result was the intent of the court in the Lynch case. However, we treat of it for the reason above set forth and find no merit whatever in the objection. We find no legislative requirement violated in any manner in the passage of this tax resolution. It would be ridiculous to compel the district to take a full occupational census and compute anticipated revenues with mathematical certainty, and we know of no such requirement nor have we been supplied with reference to any such provision or other requiring authority.

The two basic allegations of unconstitutionality relate to the "vagueness" of occupational classification and to alleged "de facto" exemptions in the administration of the tax resolution. The first we have already treated and found without merit and governed by the Treaster case, supra. The latter contention pertains not to the constitutionality of the resolution itself, but to the constitutionality of its administration as it pertains to the year in question.

Under the record of this case, we have not been able to find as a fact that any specific exclusions were made in the collection of the tax. It was alleged that the district, while not including exemptions in the resolution itself, did as a practical matter exclude persons under 21, over 65 and having incomes less than $600 from liability to pay the tax and thereby created a non uniformity that would render the tax unconstitutional for lack of uniformity.

The burden is, of course, upon plaintiffs to overcome the presumption of constitutionality and establish the tax unconstitutional beyond all doubt, or as most frequently stated, "clearly, palpably, plainly and in such manner as to leave no doubt or hesitation in our minds;" Sablosky v. Messner, 372 Pa. 47; Daly v. Hemphill, 411 Pa. 263; Rubin v. Bailey, 398 Pa. 261; Prichard v. Willistown Township School Dis-

trict, 394 Pa. 489. We do not find that burden carried in the record before us. Upon the factual issues, were all persons under 21 years of age within the district excluded from tax liability in fact and, if not all, how many, there is insufficient evidence to support a firm finding of fact. The same conclusion is true as to whether all or how many persons over 65 years of age or with incomes of less than $600 were in fact exempted from the tax. The evidence on these points is very vague and unspecific.

The complaint avers that "individuals" under 21, over 65 and with incomes under $600 were excluded by the local assessors from all classifications. It does not aver that all such were excluded or how many were so excluded. The proof is equally vague. It is admitted that no specific action was taken by the school board to "exempt" anyone and nothing appears in the minutes of the board to so indicate. Plaintiffs would have it inferred that some individuals in one or more of the categories were in fact exempted by omission from the occupation census taken from the testimony of Dr. Johns, superintendent of the Coatesville District, Mrs. Alice Pratt, a statistician in the school district's employ, and one census taker, Frieda Warren. Dr. Johns testified that at one time in the fall of 1968, it was going to be the policy of the administration to exclude those under 21 years, over 65 years, and not earning more than $600, but that such policy was changed late in the fall of 1968. He had nothing to do with the assessors or census takers. Mrs. Pratt testified that she talked with the census takers, and instructed them not to include persons under 21, or not making over $600. Frieda Warren testified that she was one of the twenty census takers in the area and that she did not include in her list persons under 21 years of age, and that these were the only exclusions. It is upon this testimony that plaintiffs contend that they have established exemptions in fact that clearly

and palpably prove the tax, at least for the year in question, unconstitutional by reason of lack of uniformity.

Additionally, 8 of 14 local assessors were called by plaintiff all of whom testified that they were called to a meeting with the chief assessor and instructed as to information to be collected, and none testified as to receiving any instructions with regard to excluding any persons from the census. Of 20 census takers, who actually went through the area and took the information to make up the lists, plaintiffs called only Frieda Warren. What persons were included or excluded by the other nineteen census takers compiling the list of taxables does not appear. The most that this record could establish with regard to exclusions or exemptions in fact is that in one sub area some persons under 21 years of age were excluded from the list of taxable persons. There is no other evidence that persons over 65 were excluded, other persons under 21 years, or persons earning less than $600 or, if they were, how many. Plaintiff argues that we should draw the conclusion from Mrs. Pratt's testimony and assume that all census takers excluded as per her instructions. Yet the census taker called as plaintiffs' own witness said she only followed one half of the instruction and did not even refer to any instruction for even that exclusion. The burden was on plaintiff to establish the exclusions and the extent of the exclusions. We must assume that the other 19 census takers would not have supported plaintiffs' contention or at least some would have been called. The law imposes a heavy burden on plaintiff to establish an alleged unconstitutionality clearly and beyond doubt and, relying upon de facto exemptions as their ground, it was plaintiffs' burden to clearly establish those exemptions as would render the administration of the tax unconstitutional for lack of uniformity. If such per-

sons as alleged were excluded by the census takers, it would not be at all difficult to so establish. No such evidence was presented or even attempted. We simply cannot make a finding merely on fair weight much less clearly and palpably that sufficient persons under 21, over 65 or earning less than $600 were excluded from the tax in fact to render it unconstitutional as to the plaintiffs. There is no evidence at all that anyone over 65 was excluded or that anyone making less than $600 was excluded.

Even were there such evidence to justify a finding that administratively the tax was not collected from persons over 65 years of age, the constitutionality of the tax would not be impaired. If this category of exemption were included in the tax resolution, we deem it of such reasonable classification as to preserve the dictates of constitutional uniformity. If such be so, administrative insertion cannot render the tax less constitutional. The action here is not to remove, chastise or surcharge administrative officials for irregularities in administration or for failure to collect a tax from a person or persons liable therefor, but the complaint here runs to the validity of the tax itself by reason of a lack of uniformity, and we perceive no basis for any differentiation in standard between nonuniformity in the tax resolution itself and by method of administration.

While the Supreme Court in Saulsbury v. Bethlehem Steel Company, 413 Pa. 316, held an exemption from an occupation tax of persons with gross incomes of less than $600 violated the requirement of constitutional uniformity, the court in the Treaster case, supra, approved an occupation tax with exemptions relating to income, seemingly overruling by implication at least the rule of the Salisbury case. In the Treaster case, supra, the complaint of lack of uniformity raised the issue of exempting persons of cer-

tain classes, particularly those under 21 years of age, and the lower court, with specific approbation of the Supreme Court, ruled such exemptions were of reasonable classification and did not render the tax unconstitutional. The reasoning advanced in the Treaster case, equally applicable here, is that categories of persons customarily excluded from taxation by reason of age are reasonable exemptions and such exclusions are not such as to violate the constitutional requirement of uniformity among the same class of taxables. Certainly exemption of those under 21 is specifically ruled proper in Treaster, supra. While there is no evidence here of any administrative exemption beyond that category, we deem the same basis in reasoning to apply as to classes of persons over 65, now customarily treated in different tax classifications. Both categories are now firmly established as reasonably distinct classes of persons for tax purposes, and even if they had been excluded would not have affected the constitutionality of the tax. As we have pointed out, the issue is purely academic as related to the factual situation as we do not find any such exclusions provided for in the tax resolution itself or that any such persons were in fact excluded from liability for payment of the tax.

## CONCLUSIONS OF LAW

1. The Coatesville Area School District did enact and impose a valid occupation tax upon all residents of that school district.

2. No invalidating error appears in the method of enactment or assessment of the tax.

3. No lack of uniformity in violation of the constitutional requirement of uniformity exists either within the tax resolution itself or by reason of method of administration or collection thereof.

## DECREE NISI

Wherefore June 2, 1969, the complaint of John Campbell et al. seeking to enjoin the collection of the occupation tax imposed by the Coatesville Area School District is dismissed and injunction is refused.