## Glassmoyer v. Owen J. Roberts School District

*Lawrence Sager* of *Sager & Sager*, for plaintiffs.

*Evan Kransley*, for defendants.

KURTZ, J., December 8, 1969.—Plaintiffs in this case, residents and taxpayers of defendant school district, seek on their own behalves and on behalf of all others similarly affected, to enjoin the collection of an occupation tax levied by the school district upon its residents for the fiscal year 1967-68. Defendant district admits that the tax in question is subject to all the infirmities of a similar tax levied by it for the year 1966-67, the collection of which was enjoined by this court and that judgment affirmed by the Supreme

Court in the case of Lynch v. Owen J. Roberts School District, 430 Pa. 461 (1968), because the assessments of the occupations taxed were not made by the proper officer. However, the school district contends that the collection of this tax should not be enjoined because of the financial hardship it will cause to the district itself and its taxpayers and the disruption which will follow in its educational program. At the hearing, this defense was variously called the defense of laches or equitable estoppel. Since this is the only issue here raised, we will limit our findings of fact to those which are relevant to it. The pleadings consist of a complaint, an answer thereto with new matter and an "answer" (sic) to the new matter.

## FINDINGS OF FACT

1. Plaintiffs are residents of and taxpayers residing within the geographical boundaries of defendant school district.

2. Defendant school district is a duly organized school district of the third class existing under the laws of this Commonwealth.

3. Defendant Dunn is tax director of the school district.

4. On June 13, 1967, the school district reenacted the occupation tax theretofore adopted by it for the year 1966-67 and fixed the rate of tax for the year 1967-68 at 45 mills.

5. Some of the plaintiffs were present at the meeting of June 13, 1967, mentioned above, and voiced their opposition to the tax and their disapproval of the board's action at that time. They were then aware of the fact that the tax had been reenacted.

6. Tax notices or bills for the tax here in question were sent to the taxpayers of the district in August of 1967. Plaintiffs received such bills at that time.

7. This suit was instituted October 25, 1967, after the chancellor who tried Lynch, supra, in this court,

filed an adjudication and entered a decree nisi declaring the prior year's occupation tax constitutionally invalid on October 6, 1967.

8. The school district issued bills for the occupation tax for the year 1967-68 totaling $649,809.31 and collected such taxes in the total amount of $586,766.08. For the year 1968-69, the year in which an occupation tax was first levied upon an assessment made by the chief county assessor, the total tax billed amounted to $530,000, of which $318,674.53 was collected. The district has received 2,041 claims for refunds for occupation taxes paid for the year 1966-67 totaling $140,148.01. It has received 2,268 such claims for taxes paid for the year 1967-68, which total $235,-473.83. One mill of tax levied upon the assessed valuation of the real estate of the district will produce $34,000 in tax income. It is estimated that the cost of making such refunds, if all refunds are made, will be five percent of the total. It is also estimated that an increase in the real estate tax rate of from 13 to 15 mills will be necessary if the refunds are to be made. The budget for the year 1969-70 is $4,684,808. The present real estate tax rate is 68 mills. The estimated normal annual increase in the budget is from 10 to 15 percent. It is estimated that if the refunds now claimed are paid during the next fiscal year, an increase of 25 mills over the present real estate tax rate will be necessary to make such refunds and to operate the school system otherwise.

9. The reenactment of the tax here in question was made upon the advice of the school district's solicitor to the effect that such an enactment was valid and could be constitutionally and legally sustained notwithstanding the fact that the identical tax for the prior year was then under attack and its validity was the subject of pending litigation.

10. As the result of the loss of tax income to date, produced by the failure of the school district to collect the full amount of the occupation taxes levied for the years 1966-67 and 1967-68, the educational program of the district has been curtailed to some extent and certain administrative economies have become necessary.

## DISCUSSION

"Laches requires not only a passage of time, but also a resultant prejudice to the party asserting the doctrine: Miller v. Hawkins, 416 Pa. 180, 205 A. 2d 429 (1964)": Young v. Hall, 421 Pa. 214, 216 (1966). "The application of the equitable doctrine of laches does not depend upon the fact that a certain definite time has elapsed since the cause of action accrued, but whether, under the circumstances of the particular case, the complaining party is guilty of want of due diligence in failing to institute his action to another's prejudice . . . The question of laches is factual and to be determined by an examination of the circumstances": Wilson v. King of Prussia Enterprises, Inc., 422 Pa. 128, 133 (1966).

In this case, plaintiffs delayed bringing their action until they had the benefit of the chancellor's adjudication and decree nisi in the case then pending. We cannot now conclude that that delay worked to the prejudice of defendant district. On the testimony of the two directors who testified, it is plain that the district's board of directors was relying upon the advice and counsel of its solicitor when it reenacted the tax. It would have gone through with the reenactment whether or not plaintiffs had started this action. After the taxing action had been taken, it was an accomplished fact. Nothing which transpired thereafter worked to the disadvantage of the district. Indeed, under the provisions of the enabling act, i. e., The

Local Tax Enabling Act of December 31, 1965, P. L. 1257, sec. 5 as amended, 53 PS §6905, it is required that such tax be enacted during the period when other school taxes are required by law to be levied and assessed, and under the appropriate provisions of the school code (the Public School Code of March 10, 1949, P. L. 30, sec. 672, 24 PS §6-672), school taxes in third class districts shall be levied and assessed during the months of February, March, April, May or June of each year. Remedial action could not have been taken after June 30th, in any event. Plaintiffs would not be required to have brought their action prior to that date.

Since laches is an affirmative defense which defendant has the burden of proving, and since its proofs in that regard do not sustain its position that it has been prejudiced by the delay of plaintiffs, that defense has not been sustained.

"Equitable estoppel applies where, because of something that has been done, a party is denied the right to plead or prove an otherwise important fact: 19 Am. Jur. Estoppel §34 (1939). It is based upon the principle that ' "a person is held to a representation made or a position assumed, where otherwise inequitable consequences would result to another who, having the right to do so under all the circumstances of the case, has in good faith relied thereon" ': Antone v. New Amsterdam Casualty Co., 335 Pa. 134, 140, 6 A. 2d 566 (1939). See also Sunseri v. Sunseri, 358 Pa. 1, 55 A. 2d 370 (1947). 'Whether an estoppel results from established facts is a question for the determination of the court: (Cases cited). It is for the jury to say whether alleged remarks were made, but it is for the court to decide whether they are susceptible of the inferences attributed to them. That statements should give rise to an estoppel they must be clear and reasonably certain in their intendment.' General Electric

Co. v. N. K. Ovalle, Inc., 335 Pa. 439, 445, 6 A. 2d 835, 838 (1939)": Nesbitt v. Erie Coach Company, 416 Pa. 89, 95, 96 (1964).

The same reasons which militate against a finding of laches in this case also preclude the application of the doctrine of equitable estoppel. Plaintiffs have not done or said anything which induced any detrimental action on the part of the school board.

Defendants put particular reliance upon the case of Wilson v. Philadelphia School District, 328 Pa. 225 (1937). In that case, plaintiffs sought to enjoin defendant .from levying and collecting, or attempting to levy and collect, taxes for school purposes for the year 1938 and subsequent years. They asserted that the statute under which defendant purported to act amounted to an unconstitutional delegation of legislative power to the board of education. The lower court and the Supreme Court, on appeal, adopted plaintiffs' position. However, because plaintiffs had not voiced their objections to the assessment of the tax in sufficient time for the school board to have sought proper authority from the legislature to impose taxes necessary to the continued operation of the school system, the Supreme Court modified the decree of the lower court and directed that for the years 1938 and 1939 during which a valid tax could not be imposed under the authority of the enabling act, taxation at a rate which had theretofore been established would be permitted. The court pointed out that through the adoption of this procedure, the school district could continue to function until such time as the legislature could be regularly convened and valid enabling legislation adopted. Thus, the interests of the public which are served by the continued operation of the school system would be protected.

In arriving at that judgment, the Supreme Court said, at page 244 of its opinion:

"No principle has become more firmly established in the field of constitutional law than the fact that a person may effectively by acts or omission waive a constitutional right to the protection of which he would otherwise be entitled, provided the waiver does not run counter to public policy or public morals. This is nothing more than the equitable doctrine of estoppel applied in the realm of constitutional law and is uniformly upheld in cases where the constitutional provision is solely protective of property rights."

Again, at pages 245 and 246 of its opinion, that court said:

"At the time the now delinquent school taxes were levied, the property owners who became liable for the payment thereof realized that the revenues to be derived from their payment would be counted on to supply the funds necessary to meet the obligations incurred in the administration of the public school system. In order to avail themselves of the right to attack the validity of the tax levies, it was incumbent upon them to make known their intention to resist payment. They could not sit by and permit the school board to rely upon payment of their taxes to its detriment and to the detriment of other taxpayers. To permit a deliquent taxpayer to raise a constitutional objection to the validity of the claim against him, after expenses have been incurred in reliance on his future payment, would be for the court to completely shut its eyes to equity and place an unjust burden on future generations. Once a taxpayer has omitted to voice his objection within a *reasonable time* after the levy has been made and with knowledge that his claim will be made the basis of expenditures to be incurred, and the expenditures have been made, it is too late for him to attempt to impeach the validity of the tax levy." (Italics supplied.)

In the instant case, plaintiffs did voice their opposi-

tion to the reenactment of the tax at the meeting of June 13, 1967. At that time, three suits challenging the validity and constitutionality of the tax then reenacted were pending. Also at that meeting, the fact of the pendency of those suits was discussed by the board with its solicitor and the solicitor then assured the board that those pending actions would be determined to the school district's advantage. In this setting, the tax now being challenged was reenacted. It is obvious, we think, that the board was not lulled into a false sense of security by any inaction on the part of these plaintiffs. As we have already noted, this board had decided to reenact this tax come what may.

We think also that under the circumstances of this case these plaintiffs did act within a reasonable time after the levy in question was made. There was little more than two weeks remaining between the date of the reenactment and the time when school taxes could no longer be levied. To have required plaintiffs to have instituted their suits within that period under the circumstances here present would amount to an unreasonable limitation upon their rights to challenge the validity of the tax.

In arriving at the judgments just expressed, we have not overlooked the provisions of section 6 of The Local Tax Enabling Act of December 31, 1965, P. L. 1257, 53 PS §6906, which provide that no tax levied for the first time by any political subdivision under the authority of this act shall go into effect for 30 days, during which time taxpayers, if they can obtain the joinder of the required number, may appeal. This section of the act was in effect at the time Lynch, supra, was decided. The court there held that its provisions could not be invoked against plaintiffs in that case. We believe that decision is controlling here. Furthermore, we are here concerned with the reenactment of a prior tax which has since been declared in-

valid. The act refers only to a tax levied for the first time; consequently, it would have no application to the facts now before us. It is for these reasons that we have not invoked that section of the law against the present complainants.

## CONCLUSIONS OF LAW

1. The occupation tax levied by defendant school district for the fiscal year 1967-68 is invalid in that it is based upon assessments which have not been made by the Chief Assessor of Chester County.

2. Plaintiffs are not guilty of laches; neither should their claims be denied by reason of the doctrine of equitable estoppel.

3. Plaintiffs are entitled to equitable relief.

## DECREE NISI

And now, December 8, 1969, it is ordered and decreed that defendants, Owen J. Roberts School District and Marita Dunn, its tax director, be and are hereby restrained and enjoined from the collection of an occupation tax levied at a meeting of the school board of said district held June 13, 1967, for the fiscal year 1967-68, upon the occupations of all residents of said district. Each of the parties shall pay his own costs.