Edgewood Borough School District Appeal.

Argued September 27, 1971. Before JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

reargument refused February 1, 1972.

*Robert A. Rundle,* with him *Wright & Rundle,* for appellant.

*John D. Killian,* with him *Killian & Gephart,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, December 20, 1971:

The Act of July 8, 1968, P. L.     , 24 P.S. §§2400.1 et seq. (Act 150), establishes a comprehensive three step procedure for the formulation and adoption of plans for school district reorganization. Initially, each county board of school directors is directed to prepare and submit such a plan to the State Board of Education. The State Board in turn reviews each plan and either approves or amends it. Finally, any school district which considers itself aggrieved by a plan approved by the State Board may appeal to the court of common pleas of the county where the school district is located.

The present appeal raises two issues: (1) whether there is any right of appeal from an order of the court of common pleas made pursuant to Act 150; and (2) whether the court of common pleas in this particular instance erred in rejecting the plan approved by the State Board. For reasons appearing below, we hold

that an appeal does lie from a decision of the court of common pleas and that the court of common pleas did err in the instant case.

The present appeal arises as follows: On October 7, 1968, the Allegheny County Board of School Directors adopted a plan of school district reorganization for Allegheny County and submitted it to the State Board of Education pursuant to Act 150. The plan provided, inter alia, for the creation of a Unit 38, comprised of the School Districts of the Boroughs of Swissvale and Braddock Hills, and a Unit 40, consisting of the School District of the Borough of Edgewood alone.

Although it had operated jointly with the Swissvale School District since 1965, the Braddock Hills School District petitioned the State Board of Education, requesting that proposed Units 38 and 40 be merged into one unit. The Edgewood School District was granted leave to intervene, and hearings were conducted by the State Board on February 11 and May 9, 1969. On the latter date, the State Board rendered an adjudication dismissing Braddock Hills' petition and approving separate Units 38 and 40 as established by the County Board.

On June 9, 1969, Braddock Hills appealed the State Board's decision to the Court of Common Pleas of Allegheny County, and Edgewood was again permitted to intervene. Upon motion of the State Board, Swissvale was joined as a necessary party but did not file any pleadings or otherwise participate in the proceedings. Instead, its counsel informed the court that Swissvale was neutral with respect to the challenged reorganization plan. Additional evidence was taken at a hearing held on March 16, 1970, and on June 1, 1970, the court of common pleas entered an order reversing the adjudication of the State Board and directing that all three school districts be merged into one unit.

By per curiam order of April 16, 1971, the Superior Court affirmed the decision of the court of common pleas with Judge MONTGOMERY filing a dissenting opinion joined in by Judge CERCONE. See *Edgewood Borough School District Appeal*, 218 Pa. Superior Ct. 157, 279 A. 2d 343. We thereafter granted allocatur and supersedeas, and this appeal followed.

We are confronted preliminarily in this appeal with appellee Braddock Hills' contention that there is no right of appeal from an order of the court of common pleas made pursuant to Act 150. In so arguing, appellee refers to the last sentence of Section 5 of the Act, 24 P.S. §2400.5, which declares that the order of the court of common pleas "shall be a final order". We are unpersuaded that the quoted language in any way precludes further appellate review.

Article V, Section 9, of the Pennsylvania Constitution provides that "there shall also be a right of appeal from a court of record or from an administrative agency to a court of record or to an appellate court, the selection of such court to be as provided by law. . . ." This new constitutional mandate was implemented in part by the Act of December 2, 1968, P. L.  , No. 351, 12 P.S. §§1111.1-.2. Section 1 of that Act provides that "[e]xcept as provided in Section 2 [pertaining to orders already appealable by statute] there shall be a right of appeal under this act from *a final order*, decision, judgment or sentence of a court of record to an appellate court as provided by Section 9 of Article V of the Constitution. The aforesaid appeal shall be taken to the Superior Court unless otherwise provided by statute. . . ." (Emphasis added.) We think it clear that Article V, Section 9 and the Act of December 2, 1968, together establish a right of appeal from a final order of the court of common pleas pursuant to Act 150, and we further conclude that such an appeal prior to the effective date of the Appellate Court Jurisdiction

Act of 1970 was properly taken in the first instance to the Superior Court. See *Plains Township School District Appeal*, 438 Pa. 294, 265 A. 2d 358 (1970).*

Having determined that appellant Edgewood does have a right of appeal, we may turn to an assessment of its contention that the court of common pleas erred in amending the reorganization plan approved by the State Board.

In considering this issue we are faced at the outset with an apparent ambiguity in the text of Act 150. Section 5 of the Act begins by affording a right of appeal to the court of common pleas "by petition setting forth that such approval [by the State Board] is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law", but goes on to grant to the court of common pleas the ostensibly broader power to amend the plan "as the court, in its discretion, shall find necessary or desirable." All parties to this appeal agree, as indeed they must, that the latter language must be read in conjunction with the former, and so viewing the statute we are of the opinion that the correct interpretation of Section 5 is that a court may not amend a plan of reorganization unless it finds that the State Board has abused its discretion or has acted arbitrarily, capriciously or otherwise not in accordance with law.

---

*The second sentence of the Act of December 2, 1968, which provided that appeals from a court of record "shall be taken to the Superior Court unless otherwise provided by statute" was repealed by the Appellate Court Jurisdiction Act of 1970, P. L. 673, Art. V, §509(a)(5), 17 P.S. §211.509(a)(5). However, Edgewood's appeal was filed on June 25, 1970, well before the effective date of the Appellate Court Jurisdiction Act, and Section 507 of that Act provides for the continued jurisdiction of any court over any matter pending as of the effective date of the Act. It follows that the Superior Court was the proper forum for Edgewood's appeal notwithstanding the subsequent partial repeal of the Act of December 2, 1968. Whether or not the Superior Court is the proper forum for such appeals filed subsequent to the effective date of the Appellate Court Jurisdiction Act is a question not now before this Court.

This interpretation not only satisfies the rule that a statute must be construed as a whole so as to give effect to all of its language, *Lynch v. Owen J. Roberts School District*, 430 Pa. 461, 469, 244 A. 2d 1, 5 (1968), but also comports with settled principles of law concerning the scope of judicial review of administrative action. As noted in *Blumenschein v. Pittsburgh Housing Authority*, 379 Pa. 566, 109 A. 2d 331 (1954): "By a host of authorities in our and other jurisdictions it has been established as an elementary principle of law that courts will not review the actions of governmental bodies or administrative tribunals involving acts of discretion, in the absence of bad faith, capricious action or abuse of power; they will not inquire into the wisdom of such actions or into the details of the manner adopted to carry them into execution. It is true that the mere possession of discretionary power by an administrative body does not make it wholly immune from judicial review, but the scope of that review is limited. . . . That the court might have a different opinion or judgment in regard to the action of the agency is not a sufficient ground for interference; *judicial* discretion may not be substituted for *administrative* discretion. . . ." Id. at 572-73, 109 A. 2d at 334-35 (emphasis in original).

Moreover, such judicial deference to the administrative determination is particularly appropriate in reviewing the approval of school reorganization plans by the State Board of Education. In *Chartiers Valley Joint Schools v. Allegheny County Board of School Directors,* 418 Pa. 520, 211 A. 2d 487 (1965), we had occasion to comment upon the nature of the School Reorganization Act of 1963, P. L. 564, 24 P.S. §§2-202 et seq., the original and materially similar predecessor of Act 150: "To achieve the Legislature's announced objectives, the Act establishes a detailed procedure which utilizes local school officials and other experts in the field of educa-

tion at various local district and county levels in the review and final approval of reorganization plans as well as in the initial formulation of those plans. That procedure makes it clear that the legislative objective embodied in the Act is the prompt and expeditious reorganization of the Commonwealth's public school system. . . ." Id. at 532, 211 A. 2d at 494. Although these comments were made in *Chartiers* in the course of our conclusion that the School Reorganization Act did not constitute an illegal delegation of legislative power, they are equally relevant here and lend further support to the view that the Legislature did not intend the court of common pleas to substitute its own discretion and judgment, however well considered, for that of the State Board of Education.

Applying these principles to the instant case, we are compelled to conclude that the court of common pleas erred in rejecting the plan of reorganization approved by the State Board.

The State Board granted its approval after full and extensive hearings. In a written opinion in support of its adjudication, the Board explained its decision as follows:

"Neither unit, standing alone, approaches the desired minimum pupil population [4,000] and a combination of Units 38 and 40 would not meet the minimum population requirement. A pertinent question, therefore, is whether Units 38 and 40 possess the capability to provide a comprehensive program for the pupils in their respective areas. We feel that each unit has this capability.

"Unit 38 has a pupil enrollment in excess of 2,000. The record indicates that the component districts of Swissvale and Braddock Hills have a harmonious relationship and are presently in a jointure. There have been many improvements during the past few years in educational facilities, administration and curricula. The

educational program offered to the pupils in the Unit 38 is meeting the diversified needs of its children in the academic, business and vocational fields. Unit 38 has the financial base to continue and improve its total program without the small number of Edgewood secondary pupils that would participate in its program if Units 38 and 40 were combined.

"Although Edgewood has a pupil population below the desired minimum, it is amply meeting the educational needs of its pupils. The fact that approximately 85% of its graduating classes go on to degree granting institutions bespeaks the type of pupil which it enrolls and the adequacy of its educational program. Despite the small percentage of students that do not continue into higher education, Edgewood provides a wide variety of business and vocational courses to adequately serve all of its students. Edgewood has the financial base to continue this fine educational program for the special needs of its pupils.

"We are not convinced that a joinder of these two units will provide a better educational experience for all the pupils of the area than is presently being given in the districts as presently constituted. It is noted that the Swissvale School District, with over 80% of the pupil population in Unit 38, did not appeal or participate in these proceedings. This indicates a satisfaction with the educational program as conceived by the County Board in Unit 38.

"The State Board is empowered by Act 150 to adopt standards to which the county plans must conform, but the actual initiative in selecting the plan is reposed in the local county board of school directors. The obligation of the county board is an onerous one. Excellence in education is the ultimate goal of this Board and the Legislature of the Commonwealth of Pennsylvania. When we find that the units as proposed by a county

board reasonably approach this goal, this Board hesitates to amend that plan."

The facts and conclusions contained in the opinion of the State Board are amply supported by substantial evidence, and the record does not otherwise suggest that the State Board acted arbitrarily, capriciously or in bad faith. To the contrary, it appears that the State Board considered the matter fully, fairly and carefully, and scrupulously fulfilled its statutory mandate to "approve such plans as it deems wise in the best interests of the educational system of the Commonwealth." 24 P.S. §2400.3.

The court of common pleas nevertheless concluded that the State Board's approval of separate units 38 and 40 was "not in accordance with law". Specifically, the court held that the State Board's approval of separate units 38 and 40 failed to comply with the expressed goal of Act 150 to achieve school districts of more than 4,000 pupils. We disagree.

Section 3 of Act 150, 24 P.S. §2400.3, deals in part with the question of pupil population and provides as follows: "No plan of organization of administrative units shall be approved in which any proposed school district contains a pupil population of less than four thousand (4,000), unless when factors of topography, pupil population, community characteristics, transportation of pupils, use of existing school buildings, existing administrative units, potential population changes and *the capability of providing a comprehensive program of education* are considered by the State Board of Education as requiring the approval of a plan of organization of administrative units in which one or more proposed school districts contains a pupil population of less than four thousand (4,000)." (Emphasis added.)

As set out above, one of the factors justifying the approval of a school district of less than 4,000 is the capability of providing a comprehensive program of

education. Here the State Board specifically found that Units 38 and 40 were both separately capable of affording such a program to their respective students. We believe that the State Board, when faced with this fortunate and desirable situation, had the discretion under Act 150 to leave well enough alone and approve separate Units 38 and 40 as being "in the best interests of the educational system of the Commonwealth."

The orders of the Superior Court and the Court of Common Pleas of Allegheny County are reversed.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.