Jones *v.* Oxford School District.
Keller *v.* Oxford School District.
Mahan *v.* Oxford School District.

Argued June 2, 1971, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Manderino, Mencer and Rogers.

*Arthur A. Moorshead,* with him *Moorshead & Niccolo,* for appellants.

*C. Richard Morton,* with him *Griffith, Morton & Buckley,* for appellees.

OPINION BY JUDGE MENCER, September 10, 1971:

These three appeals, consolidated by the Court of Common Pleas of Chester County, arise from three complaints in equity seeking to enjoin a third class school district (School District) and its tax collectors from collecting occupation taxes for the school years 1966-67, 1967-68, and 1968-69 and to have the taxes declared in-

valid and unconstitutional. The chancellor, by an adjudication dated June 30, 1970, entered a decree nisi dismissing the complaints, exceptions to this decree were dismissed by the court en banc and a final decree was entered on January 13, 1971. These appeals followed.

On *June 22, 1966,* the School District adopted an Occupation Tax Resolution for the fiscal year commencing July 1, 1966 (for the 1966-67 school year), and, subsequently, on *December 27, 1967,* a complaint in case No. 1941-1967 was filed and service on the School District was made on January 5, 1968. Again, on *June 20, 1967,* the School District adopted an Occupation Tax Resolution for the fiscal year commencing July 1, 1967 (for the 1967-68 school year), and, on *February 2, 1968,* a complaint in case No. 1950-1968 was filed, but no service was made on the School District until September 3, 1969. Finally, on *June 18, 1968,* the School District adopted an Occupation Tax Resolution for the fiscal year commencing July 1, 1968 (for the 1968-69 school year), and, on *November 27, 1968,* a complaint in case No. 2040-1968 was filed.

The School District admits the invalidity of the tax resolutions in cases Nos. 1941 and 1950 for the sole reason that the assessments of occupations taxed were not made by the Chief County Assessor as required by *Lynch v. Owen J. Roberts School District,* 430 Pa. 461, 244 A. 2d 1 (1968). However, it argues that in both of those cases, as well as in No. 2040, appellants have been guilty of laches and are therefore barred from maintaining their actions. It further contends that injunctions against collection of these taxes would place the School District in a fiscal crisis.

The Adjudication and the Final Decree in these cases were grounded on the doctrine of laches and on the case of *Wilson v. Philadelphia School District,* 328

Pa. 225, 195 A. 90 (1937). For the reasons set forth below, we affirm the lower court and adopt much of President Judge Gawthrop's language in the Adjudication. We note that he not only was the Chancellor for these cases but that he also wrote the opinion in support of the final decree dismissing the plaintiff's exceptions to the decree nisi.

"In No. 1941 the Complaint was filed to begin the action on December 27, 1967. In No. 1950 the Complaint was filed to begin the action on February [2], 1968. The tax resolutions therein attacked had been enacted, respectively, in June, 1966 or more than eighteen months, and on June 20, 1967 or more than six months, before the first action brought. In No. 2040 the Complaint was filed to begin the action on November 27, 1968, over five months following reenactment of the tax resolution on June 18, 1968 but at a time when the District was on notice of at least the first suit, No. 1941. All Plaintiffs were fully aware of the enactment of each of the respective tax resolutions at or about the time of their adoption, respectively, and before July 1 in each year. Tax bills for fiscal years 1966-67 and 1967-68 were dated August 1 in each year and were mailed on or about those dates. Tax bills for the fiscal year 1968-69 were dated October 1, 1968 and were mailed on or about that date.

" 'Laches requires not only a passage of time, but also a resultant prejudice to the party asserting the doctrine, Miller v. Hawkins, 416 Pa. 180 [205 A. 2d 429 (1964)];' Young v. Hall, 421 Pa. 214, 216 [218 A. 2d 781, 783 (1966)]. 'The application of the equitable doctrine of laches does not depend upon the fact that a certain definite time has elapsed since the cause of action accrued, but whether, under the circumstances of the particular case, the complaining party is guilty of want of due diligence in failing to institute his action

to another's prejudice. . . . The question of laches is factual and to be determined by an examination of the circumstances': Wilson v. King of Prussia Enterprises, Inc., 422 Pa. 128, 133 [221 A. 2d 123, 126 (1966)]; Siegel v. Engstrom, 427 Pa. 381 [235 A. 2d 365 (1967)].

"Taking the 1966 and 1967 tax resolutions together, it seems clear that the doctrine of laches applies as to both and requires a decree in favor of the respective defendants in the first two actions, Nos. 1941 and 1950. Plaintiffs in those cases knew in June, 1966 of the adoption of the 1966 resolution and were further aware of it on receiving tax bills for that occupation tax in August, 1966. The fact that they and others formed a Citizens' Association about the time of enactment of the 1966 resolution and attended various meetings to organize protests from time to time until they filed their Complaint on *December 27, 1967,* some eighteen months later, is no answer to the School District's argument. Only by docketing an action could Plaintiffs in law assert the rights they now contend for. Instead they sat idly by for 18 months while the School District adopted its 1966-67 budget, enacted the occupation tax resolution for that fiscal year, and committed itself to financial obligations within the scope of that budget and the taxes imposed to fund it without taking any *legal* steps to enjoin such action, not only before June 30, 1966, the statutory limit of time for enactment of the tax, but for *6 months beyond June 30, 1967, the time limit for its reenactment for the fiscal year 1967-68.* No clearer case of laches could be made. There was obviously a change of circumstances, prejudice and injury to the School District resulting from Plaintiffs' delay, without giving notice of intention to resist the tax, in protesting legally the imposition of the tax for 1966-67: cf. Employees Occupational Privilege Tax Mutual Aid Assoc., et al. v. Twp. of Hampden, et al., 19

Cumb. L. J., 58, at 67 [(1969); this decision was affirmed by the Supreme Court on other grounds, 439 Pa. 146, 266 A. 2d 736 (1970)]. For the same reasons laches bars the attack on the 1967-68 tax enacted in June, 1967. Again the District was allowed to adopt its budget, enact tax resolutions to fund it, and to commit itself to those expenditures while plaintiffs took no legal action to prevent it until 6 months later. In the second action, No. 1950, begun February [2], 1968, attacking the same two tax resolutions, the questions raised have been answered above in relation to the first action, No. 1941, and further comment is unnecessary. Laches bars that action as well.

"In the third action, No. 2040, the School District was on notice at the time of reenacting the tax resolution in June, 1968 of the pendency of at least the first, if not also the second, of the two prior actions Nos. 1941 and 1950, attacking on numerous grounds the 1966 original and the 1967 reenactment of the tax resolution. In that respect the circumstances differ from those in the first two actions and from those in Township of Hampden, supra. In other respects they are similar in that commencement of the action was on November 27, 1968, five months after adoption of the budget, reenactment of the tax, and commitment of the District to its 1968-69 financial and operating program. Thus change of circumstances, prejudice and injury to the District were again permitted to occur before suit was brought and laches would again appear to bar maintaining the third action. But if it be thought the fact that the District was on notice of pendency of one or both prior actions at the time of reenacting the tax in June, 1968 prevents application of the doctrine of laches, the defendants must still prevail under the rule announced in Wilson v. Philadelphia School District, et al., 328 Pa. 225 [195 A. 90 (1937)]. It was

there held at 244-46 [195 A. at 100-101] that *mere inaction* on the part of a taxpayer may constitute a *waiver* of the right to complain where a party knows that others are going ahead and making expenditures on the faith of the validity of the claim against him and the circumstances are such as to make it inequitable to permit subsequent invocation of *even a constitutional right* which he has failed to assert seasonably and within a reasonable time after the claim arose. That rule applies in No. 2040 even if the doctrine of laches does not, and requires a decree in favor of defendants."

Furthermore, we agree with the School District relative to the general significance of the thirty-day time limitation (as set forth in Section 6 of The Local Tax Enabling Act, Act of December 31, 1965, P. L. 1257, 53 P.S. §6906) within which a group of taxpayers can appeal the original enactment of the tax. This is a fairly clear indication as to the feeling of the Legislature on how soon a taxpayer must act if he wants to object to a particular local tax. As the court said in *Golden v. Andrews,* 89 Dauph. 254, 259 (1968), "All of the averments in plaintiffs' complaint could have been raised and, indeed, should have been raised by the appeal procedure provided in the statute before the tax went into effect which was long before the tax became due, and, consequently, before most taxpayers in the district paid the tax and the School District obligated itself to spend for school purposes the money raised thereby." Lacking fraud or concealment, the general rule is that laches follows the Statute of Limitations, *Elias v. Elias,* 428 Pa. 159, 237 A. 2d 215 (1968), and a taxpayer may be barred by laches from obtaining injunctive relief against the collection of school taxes, *Searfoss v. School District of Borough of White Haven,* 397 Pa. 604, 156 A. 2d 841 (1959).

Substantial questions of constitutionality (not mere allegations) have been advanced here, and an adequate statutory remedy no longer existed when these complaints were filed since the thirty-day appeal period contemplated by Section 6 of The Local Tax Enabling Act, *supra*, 53 P.S. §6906, had long since passed. Equity, therefore, has the jurisdiction and competency to consider both the constitutional and nonconstitutional questions here involved. *See Lynch v. Owen J. Roberts School District, supra,* 430 Pa. at 465, 244 A. 2d at 3, and *Rochester & Pittsburgh Coal Co. v. Indiana County Board of Assessment and Revision of Taxes,* 438 Pa. 506, 508, 266 A. 2d 78, 79 (1970). But, even though jurisdiction and competency are established, "Once a taxpayer has omitted to voice his objection within a reasonable time after the levy has been made and with knowledge that his claim will be made the basis of expenditures to be incurred, and the expenditures have been made, it is too late for him to attempt to impeach the validity of the tax levy. Under such circumstances he must be deemed to have waived all right to assert any constitutional objection which might have afforded him protection had he chosen to invoke it at the proper time. Any other course would imperil all governmental agencies under similar circumstances.", *Wilson v. Philadelphia School District, supra,* 328 Pa. at 246, 195 A. at 101, and ". . . nothing can call forth the court of chancery into activity but conscience, good faith and reasonable diligence: Kinter v. Com. Tr. Co., 274 Pa. 436 [118 A. 392]. The doctrine [of laches] is founded on the equity maxim that 'equity aids the vigilant, not those who slumber upon their rights.' ", *Riley v. Boynton Coal Co.,* 305 Pa. 364, 368, 157 A. 794, 795 (1931). In short, it is simply incongruous to assert, as appel-

lants do, that equity has jurisdiction, and then simultaneously to ignore equity's maxim.[1]

Decree affirmed. Appellants pay costs.

Judge MANDERINO concurs in decision only.

[1] "Our decision to resolve this case on non-constitutional rather than constitutional, grounds accords with the established rule that a constitutional question will not be passed on unless absolutely necessary for a resolution of the controversy. See Shuman v. Bernie's Drug Concessions, 409 Pa. 539, 187 A. 2d 660 (1963) ; Rupert v. Policemen's Relief and Pension Fund, 387 Pa. 627, 129 A. 2d 487 (1957)." *Lynch v. Owen J. Roberts School District, supra,* 430 Pa. at 465 n.3, 244 A. 2d at 3 n.3.