## Lutz v. Village 2 at New Hope, Inc.

*Peter N. Harrison*, for plaintiffs.
*William M. Power*, for defendants.

GARB, *J.*, August 3, 1973—This is an action instituted in the Court of Common Pleas of Bucks County, Orphans' Court Division, the undersigned specially presiding, by virtue of a petition to revoke or reform an alleged inter vivos trust and to compel a trustees' account. Plaintiffs are a group of individuals allegedly all of whom are owners of dwelling units in Village 2 at New Hope, Bucks County, Pa. and members of the Village 2 Homeowners' Association, an unincorporated association. Defendant, Village 2 at New Hope, Inc., is a corporation with its principal office and place of business at Post Office Box 2222, Village 2, New Hope, Bucks County, Pa. Defendant, First Charter National Bank, is a New Jersey corporation with its principal office and place of business at 1 Rossmoor Drive, Jamesburg, N.J., employing and maintaining a resident trust administrator with an office located at Post Office Box 303, New Hope, Bucks County, Pa. Both defendants have filed extensive preliminary objections to the petition which we decide herein.

By virtue of section 1, rule 1 of the Pennsylvania Supreme Court Orphans' Court Rules, except where otherwise provided by a rule adopted by the Supreme Court or by an act of assembly, or by gen-

eral rule or special order of the local Orphans' Court, the pleading and practice in the Orphans' Court Division shall conform to the rules regarding pleading and practice in equity in the local Court of Common Pleas. Bucks County Orphans' Court Rule *301.1 provides that, where applicable, the rules applicable to the Court of Common Pleas of Bucks County shall apply and are adopted as Rules of the Orphans' Court Division. Bucks County Orphans' Court Rule *302.1 provides that preliminary objections shall be available to any party but shall be limited to questions of law, form or jurisdiction. Pa.R.C.P. 1501 provides that, except as otherwise provided, the procedure in an action in equity shall be in accordance with the rules relating to an action in assumpsit. Under Pa.R.C.P. 1509 it is provided that preliminary objections as authorized by Pa.R.C.P. 1017(b) are available to any party in an action in equity. Therefore, it is appropriate that preliminary objections to the petition be considered by the court raising questions which would be cognizable in an action in equity.

With the exception of a motion for a more specific pleading, the preliminary objections are directed to the very heart of the cause of action pleaded in the petition and, therefore, move, essentially, for summary dismissal. Such preliminary objections admit as true all well-pleaded material facts set forth in the petition, as well as all inferences reasonably deducible therefrom, but not the pleaders' conclusions of law: Eden Rock Country Club v. Mullhauser, 416 Pa. 61 (1964), and Lerman v. Rudolph, 413 Pa. 555 (1964). In determining whether such preliminary objections should be sustained, two standards must be borne in mind: (1) the question at issue is not whether the petition is so

clear in form and specification as to require no amendment before plaintiff is entitled to proceed to trial, but whether, upon the facts averred, the law says with certainty that no recovery is permitted; and, (2) where a doubt exists as to whether such preliminary objection should be sustained, this should be resolved in favor of overruling it: Clevenstein v. Rizzuto, 439 Pa. 397 (1970), and Sacred Heart Hospital v. Lanshe, 445 Pa. 57 (1971).

The petition alleges that petitioners are all owners of dwelling units in Village 2 and are members of the Village 2 Homeowners' Association. The petition further pleads that Village 2 at New Hope, Inc. is a corporation with principal office and place of business in New Hope, Bucks County, Pa., and is the settlor of all trust agreements referred to in the petition. First Charter National Bank is a New Jersey corporation with principal place of business in New Jersey but with a resident trust administrator in New Hope, Bucks County, Pa., and is the trustee named in all trust agreements referred to therein.

On or about May 27, 1969, it is alleged that Village 2 executed a certain community trust instrument naming First Charter National Bank as trustee, a copy of which instrument is annexed to the petition and incorporated therein. It is alleged that First Charter National Bank did accept delivery of the document and noted its agreement to act as trustee thereon. It is alleged that the trust document contains no language retaining in the settlor a right of revocation and that a mode of termination is specifically set forth in paragraphs 29 through 34, inclusive, therein. The said document, the petition alleges, has never been revoked but rather remains in full force and effect. It is alleged that

Village 2 is a planned unit development featuring a condominium form of ownership whereby each individual homeowner enjoys a right in common with all other owners and occupants of residences to use and enjoy common lands and facilities within Village 2. Management and maintenance of common lands and facilities is governed by the terms and conditions of the asserted community trust document. It is further alleged that petitioners purchased their dwelling units in Village 2 in reliance upon the terms and conditions of the aforesaid community trust, which was represented to them by various principals and agents of Village 2, as being the instrument which controlled, and will continue to control, the management and maintenance of the common lands and facilities.

The petition alleges that on or about June 26, 1972, Village 2 executed a purported deed of trust for the purposes of empowering respondent, First Charter National Bank, as trustee, to manage and maintain the common lands and facilities of Village 2 at New Hope. A copy of this document is likewise annexed to the petition and incorporated therein. It is alleged that the purported deed of trust is ineffectual and of no legal consequence since it attempts, allegedly, to reconvey the same common lands and facilities which were relinquished to the trustee from settlors by the community trust document of May 27, 1969. It is alleged that the purported trust of June 26, 1972, contained numerous terms and conditions which differ from those set forth in the trust document of May 27, 1969, which are prejudicial to, and inconsistent with, the vested rights of petitioners. It is alleged that defendants lacked the power to alter or amend the earlier community trust when they executed the alleged

trust of June 26, 1972, and wrongfully contend that the community trust document of May 27, 1969, was revoked. Petitioners allege that they have never ratified or consented to the terms and conditions of the June 26, 1972, trust and have repeatedly demanded from defendants a full and complete account of all funds and property delivered into the possession of defendants as fiduciaries under the community trust but have not received same. Petitioners further contend that they have been denied the benefit of a number of the services to which they were entitled from the trustee under the provisions of the community trust instrument.

As a result of the foregoing allegations, petitioners demand certain relief, including a demand for an accounting setting forth all moneys and other property received by the trustee, as well as all expenses paid, including commissions as trustee: an order that the May 27, 1969, community trust instrument be declared valid and in full force and effect; an order that defendants record the community trust instrument of May 27, 1969, in the Office for the Recording of Deeds by and for Bucks County, and that they be ordered to revoke formally in the same office the trust document of June 26, 1972, if it has been recorded there; order that the trust instrument of June 26, 1972, be declared null, void and of no effect; order that defendants be held liable as constructive trustee for all moneys paid into their hands by plaintiffs for purpose of managing and maintaining the common lands and facilities of Village 2; if the trust instrument of June 26, 1972, be held valid, order and decree that it be amended and reformed so as to be consistent with the terms, conditions and provisions of the com-

munity trust instrument of May 27, 1969, and, lastly, if the June 26, 1972, trust instrument should be held valid, order and decree that any payments due and owing thereunder from homeowners be reduced by some proportion to be determined by the court so as to take into consideration the failure of Village 2 and the trustee to furnish all services and amenities to which the homeowners are entitled under the terms and provisions of the community trust instrument of 1969.

The community trust instrument of May 27, 1969, is a lengthy document, purporting to constitute an agreement between Village 2 at New Hope, Inc., which is described therein as the grantor and settlor, and the First Charter National Bank of New Brunswick, N.J., described as grantee and trustee thereunder. The document is executed and acknowledged by the appropriate corporate officers of each corporation. It provides for the grant by Village 2 to the First Charter National Bank for the lawful consideration of $100, receipt of which is acknowledged, of all the lands, buildings, improvements, ways, alleys, passages, waters, watercourses, rights, liberties, privileges, hereditaments (corporeal and incorporeal) and appurtenances whatsoever thereunto belonging or in anywise appertaining and reversions and remainders, rents, issues and profits therefrom, and all the estate, right, title, interest, property, claim or demand whatsoever the said Village 2 at New Hope, Inc., in law, equity or otherwise whatsoever, of, in and to the same and every part thereof as bounded and described on Exhibit A attached thereto, incorporated therein and made a part thereof, conditioned, however, upon the terms, covenants, conditions and undertakings to well, truly, faith-

fully and in accordance with law and equity, discharge the terms and conditions of the instrument. It is then provided that it is the intention of the parties to create a means to own, manage, operate, maintain the open space in the development known as Village 2 at New Hope and to have the trustee supervise the performance of such duties to maintain and create active and passive recreation facilities, to supply basic services such as, but not limited to, water and sewer, groundskeeping and any other community facilities which the trustee deems necessary or advisable and, further, to give the trustee the greatest possible flexibility and management so that as much of the trust funds as possible will be used for the trust purposes and not expended in administrative costs and consistent therewith the widest possible powers are granted to the trustee to collect the moneys necessary for the operation of the trust. It is further stated to be the intention of the parties to create various classes of service, if deemed necessary in the sole discretion of the trustee, so that an orderly system of priorities can be established and charges made, all of which is stated to be for the proper use and benefit of the owners and lawful occupiers of the land and buildings encompassed in Village 2 at New Hope, where so stated in their deed or lease so long as they remain owners or lawful occupiers thereof.

Trustee is defined to include substituted trustee or trustees, their successors or assigns. Beneficiary is defined in a similar fashion. The trustee agrees to take and hold title for the aforesaid purposes and to well and truly administer the trust under the laws pertaining thereto in the Commonwealth of Pennsylvania. It is stated to be the intention of the parties to create a nonprofit entity to take title to,

create, keep and maintain the open space, water, roads, walks and ways, to furnish and maintain services for the benefit of the owners and occupiers of land within Village 2 at New Hope, to maintain the ecological balance of the land, to create, preserve and maintain active and passive recreation facilities, to provide additional security where necessary, to bill and collect moneys for the foregoing, and to do all things incidental and necessary for a term of seven years from the date thereof. The trust instrument then provides the various rights of the trustees, including the right to employ, contract for, subcontract, hire, fire or authorize agents on its behalf to supervise, manage and execute the work to be done consistently with its duties under the trust instrument, and to employ any person, firm or corporation, to seed, sod, plant, transplant, prune, fertilize, water, cut, destroy, pull plants up or out, spray substances as well as the right to dam or alter the flow of waters on the trust land, build, erect, repair, maintain, renovate roads, walks or paths, lay pipe, culverts, bury utilities, put up lights or poles, erect signs and traffic and safety controls of various sorts.

The trustee is further given the right to make reasonable rules and regulations as to the conduct of the beneficiaries upon the trust land, to preserve, protect and enhance them, to prevent waste and erosion, to repair roads and walks and to make and enforce reasonable rules for the use of recreational facilities, as well as for the conduct, dress, manner and deportment of the beneficiaries. The trustee further has the right to enter into management or management and operating contracts with other persons for the discharge of its duties, to employ professional counsel, to employ or contract for

water and sewer and supply or re-sell or lease the same, as well as for electricity, gas or other forms of utilities, snowplowing or removal, painting, building repairs, renovating, remodeling and, if necessary, to employ or seek the advice and guidance of an advisory board.

The trustee is afforded the right to borrow or repay moneys, give notes, mortgages or other security, pledge, hypothecate, execute bonds and warrants, judgment notes, mortgage notes and other indicia of debt, to invest and reinvest moneys, to sue and be sued, to collect interest, dividends, capital gains, pay taxes, enter into contracts, insure and enter into leases or concessions and to pass good and marketable title without the necessity of any third party seeing to the application of the trust fund, to acquire by purchase, gift, bequest, devise, sale or lease additional lands to be used by the trustee for investment, to protect the trust or additional trust lands upon such term or terms as the trustee in its sole discretion deems necessary, and all other powers granted or necessarily implied shall be construed to favor the broadest discretion of the trustee. The trustee shall have the power to create various classes of services and to make appropriate charges therefor to the users thereof.

The trustee is likewise given certain financial powers and duties and the remuneration therefor is set forth. Specifically, the trustee is given the power to assess against each owner, beneficiary, a proportionate part of the whole cost of operating the entire trust, and the right to collect such charges, in some cases in advance. The trustee is directed to take and hold the funds as collected and to disburse the same for the purposes and in the manner set

forth in the document. The trustee is further permitted to retain a fee not to exceed five percent of the gross amount so collected. The trustee is further obligated to retain books of account and submit same to a disinterested certified public accountant for audit, a summary of which shall be made available to the beneficiaries annually.

The trust instrument further provides to the beneficiaries an easement to all of the public lands as described in the trust instrument.

The trust instrument further provides for a manner of interpretation of the trust instrument which will be construed for present purposes hereinafter. As heretofore noted, paragraphs 29 through 34, inclusive, provide for the manner of termination of said trust.

It is the contention of both defendants in their preliminary objections that the Orphans' Court Division is lacking in jurisdiction over both of these alleged trust instruments. Section 711(3) of the Probate, Estates and Fiduciaries Code of June 30, 1972, P.L. 508 (No. 164), 20 P.S. 711(3), provides that the Court of Common Pleas, exercised through its Orphans' Court Division, shall have jurisdiction over inter vivos trusts. The foregoing section provides as follows:

"(3) Inter vivos trusts. The administration and distribution of the real and personal property of inter vivos trusts, and the reformation or setting aside of any such trusts, whether created before or after the effective date of this chapter, except any inter vivos trust jurisdiction of which was acquired by the court of common pleas prior to January 1, 1969 unless the president judge of such court orders the jurisdiction of the trust to be exercised through the orphans' court division.

"'Inter vivos trust' means an *express trust* other than a trust created by a will, taking effect during the lifetime or at or after the death of the settlor."

An express trust is created only if the settlor manifests an intention to create it, although the manifestation may be made by conduct as well as by words. An express trust is created if it appears that there was an affirmative intention to create it: Gray v. Leibert, 357 Pa. 130 (1947). An express trust is a fiduciary relationship with respect to property, subjecting the person by whom the property is held to equitable duties to deal with the property for the benefit of another person, which arises as the result of a manifestation of an intention to create it. The following characteristics of an express trust are to be noticed: (1) a trust is a relationship; (2) it is a relationship of a fiduciary character; (3) it is a relationship with respect to property, not one involving merely personal duties; (4) it involves the existence of equitable duties imposed upon the holder of the title to the property to deal with it for the benefit of another; and (5) it arises as the result of a manifestation of intention to create the relationship: O'Brien Trust, 9 Chester 178 (1959). It is essential to the creation of a trust that there be a trustee, something held in trust, commonly known as "the trust res," and a beneficiary for whom the property is held: Sherwin v. Oil City National Bank, 229 F. 2d 835 (3rd Cir., 1956).

Clearly, on the face of this petition, together with the document incorporated therein, these criteria of an express trust are met. There is a settlor denominated, being Village 2 at New Hope, Inc., and a named trustee, The First Charter National Bank. Under the terms of the agreement, title to specifically described property is conveyed from the

settlor to the trustee and consideration therefor recited in the document. The duties and obligations of the trustee are extensively set forth in the document and the persons for whom these duties are to be discharged, the beneficiaries, specifically described, and under that description, in terms of the petition itself, plaintiffs herein fall.

Defendants contend, however, that this document cannot be construed as an inter vivos trust for purposes of the application of this statute conferring jurisdiction upon the Orphans' Court Division because the settlor is a corporation as opposed to an individual. Although no authority for this proposition is cited by either defendant, they point to the second paragraph quoted above from the act and assert that a clear inference is created therein that only a trust created by an individual can qualify. We do not believe, however, that this definition of inter vivos trust necessarily excludes a trust created by a corporation. We believe that the paragraph in question merely provides that an inter vivos trust does not include a trust created by a will, which takes effect during the lifetime or at or after the death of the settlor. Quite obviously a corporation may not create a trust by will but only by deed or agreement or similar indenture. Immediately following the foregoing definition of inter vivos trusts, the act includes a list of those types of trusts which are included and those which are excluded. Specifically, it is provided that inter vivos trusts include trusts created under a deed, agreement or declaration except as hereinafter excluded.[1] Further, it should be noted that among those types of trusts included under subsection (iii) is a common trust

---

1. Those specifically excluded are not relevant to our determination herein.

fund or mortgage investment fund created by a corporate fiduciary for the investment of funds held by it as fiduciary or co-fiduciary. We would construe this as a recognition that under some circumstances, at least, a corporation can constitute the grantor of an inter vivos trust. It has been recognized that a corporation is such an entity as may create a trust. See Bogert, Trusts and Trustees, 2d ed., § 41. Where the State Corporation Code bestows it among the powers of a corporation, a corporation may create a trust: Hendin v. American Distilling Company, 54 F. Supp. 863 (S.D. Ill., 1944). See also Wachovia Bank & Trust Co. v. Steele's Mills, 225 N.C. 302, 34 S.E. 2d 425 (N.C., 1945). Under the Pennsylvania Corporation Code a corporation is empowered to execute a deed of trust: Act of January 18, 1966, P.L. (1965) 1305, sec. 12.1, 15 P.S. §1302. Therefore, we are satisfied that the preliminary objections on this ground must be denied and dismissed.

We believe that the language of the act itself is sufficient to afford the Orphans' Court Division jurisdiction to afford plaintiffs at least some of the relief they request in their petition. As noted, the court has jurisdiction to administer and to distribute real and personal property of inter vivos trusts as well as the reformation or setting aside of any such trusts. One aspect of the relief demanded is the setting aside of the alleged trust instrument of June 26, 1972, through a finding of validity of the trust instrument of May 27, 1969. Even prior to the present act, the Orphans' Court had jurisdiction to entertain such a petition where it was incidental to other relief properly vested in the Orphans' Court. See Potteiger v. Fidelity-Philadelphia Trust Company, 424 Pa. 418 (1967), and La Rocca Trust, 411

Pa. 633 (1963). Furthermore, a reformation of the trust of June 26, 1972, is required. In addition to the other relief requested, an accounting is demanded by plaintiffs, as beneficiaries, which, of course, is cognizable in the Orphans' Court.

Defendants next contend that defendant, First Charter National Bank, being a New Jersey corporation with its principal office located and situate in the State of New Jersey, cannot lawfully be named a fiduciary under the laws of the Commonwealth of Pennsylvania, and that, therefore, the two trusts with which we are concerned are, at most, resulting or constructive trusts and, therefore, excluded from the definition of inter vivos trusts under section 711 of the Probate, Estates and Fiduciaries Code. Section 1 of the Act of June 30, 1969, P.L. 99, 7 P.S. §106, provides that no corporation existing under the laws of a state other than this Commonwealth or a National Bank located in another state may act in this Commonwealth as fiduciary unless it shall be appointed fiduciary, inter alia, by a deed of trust and unless the laws of such other state confer like powers on corporations existing under the laws of this Commonwealth. We may take judicial notice of the statutes of every state, territory and other jurisdictions of the United States: Act of May 4, 1939, P.L. 42 (No. 36), sec. 1, 28 P.S.§§291, et seq. See also Pennington Trust, 421 Pa. 334 (1966).

The right of a foreign bank to discharge fiduciary responsibilities in Pennsylvania was formerly nonexistent and is now permitted under these limited circumstances by virtue of this amendment and its predecessor. See the Act of November 30, 1965, P.L. 1109 (No. 356), sec. 106, 7 P.S.§106. See also Frank Trust, 400 Pa. 614 (1960). The Banking

Code of the State of New Jersey provides that a foreign bank, defined as a corporation, *other than a banking institution*, organized under the laws of the United States, a territory or possession of the United States, another state, or a foreign government, may transact business in New Jersey only as executor or as testamentary trustee or guardian, and then only when named in a decedent's will or codicil thereto. Under the Pennsylvania Code it is clear that the First Charter National Bank was appointed trustee by a deed of trust but it is contended by defendants that it cannot be permitted to do business in Pennsylvania because of the lack of reciprocity afforded to Pennsylvania banks in the State of New Jersey.

We do not decide whether the Banking Code of the State of New Jersey does, in fact, deny reciprocity to a bank authorized to do business in Pennsylvania because the definition of "foreign bank" as used in the New Jersey statute specifically excludes from that definition a corporation organized under the laws of another state which is a banking institution. Therefore, it is unclear as to whether a Pennsylvania banking institution is, in fact, excluded from doing business in the State of New Jersey. In any event, this preliminary objection must be rejected on the face of the petition, the facts of which must be assumed to be true for purposes of these preliminary objections. Paragraph 5 of the petition alleges that the First Charter National Bank is a trustee, employing and maintaining a resident trust administrator with an office located at Post Office Box 303, New Hope, Bucks County, Pa. On the face of this petition, we have no way of knowing the nature of the resident trust administrator or of the office maintained by him at

the address given. There is, at least, an assertion that a resident trust administrator transacts business at a situs located within Pennsylvania and, in fact, within this county. Without knowing more about the nature and status of this resident trust administrator we are unable to determine whether the appointment of the First Charter National Bank as trustee is, in fact, in violation of the Banking Code of the Commonwealth of Pennsylvania. Therefore, we cannot decide on this record that the appointment is unlawful and, therefore, void.

Having made the foregoing determination, an ancillary attack by defendant Village 2 must likewise be rejected. It is its contention that, based upon the premise that First Charter National Bank was not legally empowered to act as the fiduciary, it could not accept a conveyance of the property constituting the trust res. Therefore, so contends Village 2, the trust has never been created. However, as heretofore noted, we cannot decide on the face of this record as a matter of law that the First Charter National Bank was legally unable to accept the conveyance and act as the fiduciary and, therefore, this contention must fall. Secondly, Village 2 contends that there was, in fact, no conveyance of the trust res. However, this argument flies directly in the face of the trust indenture itself. The trust indenture is a conveyance of all of the property enumerated and described therein from Village 2 to the First Charter National Bank. Therefore, on the face of this record, this contention must be rejected.

Defendants contend that the petition is fatally defective because of the failure of plaintiffs to allege compliance with conditions precedent to commencement of these legal proceedings. Specifically, defendants contend that the community

trust agreement of May 27, 1969, contains among its provisions certain procedures whereby beneficiaries may adjudicate any legal questions they may have regarding the instrument and that these procedures are exclusive and must be followed prior to any court proceeding.

Our review of the trust instrument convinces us that defendants are in error in this contention. Defendants contend that paragraphs 20, 21 and 28 of the trust instrument fully and adequately define the procedures which the beneficiaries must follow in order to adjudicate any dispute they may have with the trustee and that these procedures have not been alleged to have been followed by the petition. We are satisfied that these paragraphs do not relate to the type of action for relief sought by the beneficiaries in these proceedings.

The trust instrument contains 34 numbered paragraphs divided into separate categories, each category being prefaced with a heading or description of the paragraphs which follow. Prior to paragraph 11 there is the heading "Financial Powers, Duties and Remuneration of the Trustee." There follows, prior to the next heading, paragraphs 11 through 22, inclusive. These paragraphs, generally stated, describe the financial powers of the trustee, his manner of collecting whatever funds he is entitled to collect and the manner of making expenditures thereof, together with the determination of his commission and the manner in which it is paid. It further provides for an accounting by the trustee and a submission of that accounting to the beneficiary. Paragraph 20 then provides as follows:

"Any objection by the beneficiary hereunder shall be made in writing and directed to the Trustee by registered mail, return receipt requested, or by

an equivalent class of service of the United States Post Office which shall not include certified mail, stating with particularity the objection made and the relief, change or difference sought. It shall be signed legibly by the person objecting, give their address and be written in the English language. If specific property or properties are involved, these shall be identified by address or with such sufficient particularity as to be easily capable of ascertainment."

Paragraph 21 provides as follows:

"No beneficiary shall have the right to object, challenge, commence any suit at law or in equity or take any other action under any act now in force or hereafter to be enacted except in the manner provided herein and in no event shall any action be taken against the Trustee in any court except that situate in Bucks County and Philadelphia County in the Commonwealth of Pennsylvania."

A reading of these two sections in the chronological context in which they are placed in the overall agreement indicates quite clearly that they outline the procedures which the beneficiaries may take in objecting to the manner in which the trustee has discharged his fiscal and financial duties and obligations under the trust instrument. These two sections are placed within the general category of trustee's duties and powers described as "Financial Powers, Duties and Remuneration of the Trustee" and follow immediately the paragraph directing that the trustee shall submit the books, records and memoranda to an annual audit by a disinterested certified public accountant who shall render a report therein in writing to the trustee and in summary form to the beneficiaries. The burden of the

614

beneficiaries' petition before this court is not to question the manner in which the trustee has discharged his fiscal and financial duties and obligations but rather to have the court reaffirm and declare this trust instrument to be valid. Clearly, this type of action and the remedies sought are not those contemplated under paragraphs 20 and 21.

Paragraph 28 is the only paragraph under the subheading or description "Interpretation of this Instrument." Paragraph 28 reads as follows:

"In the event of any dispute as to the meaning of any term or terms used herein, or in the event that the Trustee shall be uncertain as to any term or power for the operation of this trust under the law, the question shall first be submitted to counsel for the trust who shall render an opinion. Such opinion shall be binding upon the Trustee. In the event that such question is raised by an objection by a beneficiary, it shall be submitted to counsel for the trust who shall render an opinion upon the objection. Such opinion shall be binding upon the beneficiary and the Trustee. If, in the opinion of the Trustee, the objection is wholly or substantially without merit or is made with intention to harass or annoy, is moot or is *de minimus*, (italics in original) the Trustee shall have the right, at its option, to refuse to request an opinion of counsel unless the objector agrees to pay the charge therefor in advance upon such terms as counsel for the trust deems reasonable, fit and proper for services of like kind. Before any action is brought in any court or before any administrative or quasi judicial body by any beneficiary, the foregoing remedy shall first be exhausted."

Once again, it is perfectly clear that the grava-

men of the beneficiaries' legal position before this court is such as would not be encompassed within the procedural remedy set forth above. As stated in the paragraph itself, the procedure set forth therein is directed towards any dispute as to the meaning of any term or terms used within the trust instrument or in the event that the trustee shall be uncertain as to any term or power of the operation of the trust under the law. Clearly, petitioners herein raise no dispute as to the meaning of any term or terms used within the trust instrument nor does this cause of action arise as the result of the uncertainty of the trustee as to any term or power or the operation of the trust under the law. As heretofore stated, petitioners herein seek to have reaffirmed this trust instrument and that clearly does not fall within the procedure set forth in paragraph 28. For the foregoing reasons, we are satisfied that there is no condition precedent set forth in the trust instrument incumbent upon petitioners herein and, therefore, the petition is not defective for failure to state compliance with a condition precedent.

Village 2 asserts as one of its preliminary objections the existence of an adequate remedy at law. It is appropriate that this be raised by preliminary objection. The objection of the existence of a full, complete and adequate nonstatutory remedy at law shall be raised by preliminary objections and if not so pleaded, is waived: Pa.R.C.P. 1509; Setlock v. Sutila, 444 Pa. 552 (1971). If there is an adequate remedy at law, there is no jurisdiction in equity: Shomo v. Derry Borough, 5 Pa. Commonwealth Ct. 216 (1972), and Credit Alliance Corporation v. Philadelphia Minit-Man Car Wash, 450 Pa. 367 (1973). However, if part of the relief sought must be in equity, then the chancellor should hear the entire

dispute: Trimble Services, Inc. v. Franchise Realty Interstate Corporation, 445 Pa. 333 (1971). Petitioners' request for an accounting may be cognizable in equity, although it may likewise be cognizable on the law side of the court (Stuyvesant Insurance Co. v. Keystate Insurance Agency, 420 Pa. 578 (1966)), and their request that defendants be ordered and directed to record the trust indenture of May 27, 1969, and revoke of record the trust indenture of June 26, 1972, are obviously equitable remedies not cognizable on the law side of the court. The requested order that the trust indenture of May 27, 1969, be declared valid and of full force and effect and that the trust indenture of June 26, 1972, be declared to be null and void and of no legal effect, or, in the alternative, the reformation of the trust indenture of June 26, 1972,[2] are all remedies cognizable in a court of equity. Likewise, considering the number of beneficiaries participating as petitioners herein and the variety of relief requested, there is jurisdiction in the court of equity because equitable relief is the most convenient remedy for the wrong alleged by petitioners: Kardelis v. Cangelosi, 54 D. & C. 2d 622 (1971).

The foregoing aside, we fail to understand the contention of Village 2 of an adequate remedy at law. In its preliminary objection, it makes reference to certain deeds of conveyance from Village 2 to the various petitioners. However, these deeds are not of record at this time and cannot be considered for purposes of these preliminary objections. Additionally, although those deeds may, as asserted by Village 2, afford to petitioners an action in as-

---

2. Easton v. Washington County Insurance Co., 391 Pa. 28 (1957).

sumpsit for breach of contract, the contract being the deeds, we do not believe that that fact alone deprives an equity court of jurisdiction where equitable relief is clearly sought.

Village 2 likewise raises the defense of lack of clean hands on the part of petitioners as a preliminary objection. Aside from the question of whether the doctrine of clean hands can be raised as a preliminary objection, we completely fail to understand the nature of this assertion on this record. The doctrine of clean hands is based upon the premise that one who invokes equitable principles in a court of equity must not be tainted with inequitableness or bad faith relative to the matter in which he seeks relief. Application of the doctrine is confined to willful misconduct which concerns the particular matter in litigation and does not apply to collateral matters not directly affecting the equitable relations between the parties: Shapiro v. Shapiro, 415 Pa. 503 (1964); Goldberg v. Goldberg, 375 Pa. 78 (1953); Pennsylvania Society for the Prevention of Cruelty to Animals v. Bravo Enterprises, 428 Pa. 350 (1968); and Spring City Foundry Company v. Carey, 434 Pa. 193 (1969). However, it is clear that in exercising his discretion, the chancellor is free to refuse to apply the doctrine if a consideration of the entire record convinces him that an inequitable result will be reached: Hartman v. Cohn, 350 Pa. 41 (1944), and Shapiro v. Shapiro, supra. Certainly, there is nothing on the face of this petition to indicate any conduct on the part of petitioners which can, by any stretch of the imagination, be construed as inequitableness or lack of bad faith on their part with regard to the transaction between themselves and the trustee under either of these trust instruments. Some assertions are made by

Village 2 in its brief but these are completely dehors the record and cannot be considered on this motion. Considering that the chancellor should be in a position to survey the entire record before determining whether the doctrine of clean hands should bar a suitor, we are satisfied that this preliminary objection is properly dismissed.

Village 2 also asserts the doctrine of laches as a basis for preliminary objections.[3] While it is true that a chancellor has the duty to dismiss a complaint on preliminary objections if laches clearly appear from the averments thereof (West v. Young, 332 Pa. 248 (1938), it is only in cases which are clear and free from doubt that this duty arises. Usually, the question of laches can be determined only after the court has had an opportunity to appraise the evidence and so determine whether a valid reason exists for the delay in bringing suit: Rush v. Butler Fair & Agricultural Association, 391 Pa. 181 (1958). Laches arise when defendant's position or rights are so prejudiced by length of time and inexcusable delay, plus attendant facts and circumstances, that it would be an injustice to permit presently the assertion of a claim against him: Commonwealth of Pennsylvania v. Folcroft Landfill Corporation, 1 Pa. Commonwealth Ct. 356 (1971). Ordinarily, laches must be determined on the basis of a thorough examination of the facts. It does not operate solely by the passage of time. Laches is an equitable doctrine operating where the circumstances show that plaintiff is chargeable with a lack of due diligence in prosecuting his claim and can be determined only upon an examination of all the circumstances and generally, not

3. See Pa.R.C.P. 1509.

simply on the basis of the pleadings: Lehner v. Montgomery, 180 Pa. Superior Ct. 493 (1956). The application of the doctrine of laches does not depend upon the fact that a certain definite time has elapsed since the cause of action accrued, but whether, under the circumstances of the particular case, the complaining party is guilty of want of due diligence in failing to institute his action to another's prejudice. The question of laches is factual and to be determined by an examination of the circumstances: Jones v. Oxford School District, 3 Pa. Commonwealth Ct. 102 (1971). Clearly, we cannot determine that laches constitutes a bar to petitioners' action on the face of this petition. Time alone is not a sufficient basis upon which to find laches and there is nothing in this petition to indicate any prejudice upon defendants as a result of whatever delay there may have been. In fact, on the face of this petition, there hardly appears to be any undue delay, even standing alone. The cause of action arose, allegedly, as the result of the execution of the so-called trust instrument of June 26, 1972. The petition was filed March 20, 1973, a period of approximately nine months later. Quite obviously, on that time span, we cannot find as a matter of law that the doctrine of laches bars petitioners' cause of action.

Defendant, First Charter National Bank, has likewise filed a motion for a more specific pleading. We are satisfied that this motion is without merit and it will be dismissed. Defendant contends that inasmuch as Village 2 and First Charter National Bank are parties defendant by virtue of different statutes in the trust instrument and, further, because of the fact that there are two separate trust instruments pleaded in the petition that it is inap-

propriate to draft the petition in one count only. Essentially, it is asserted that there is more than one cause of action and that, therefore, there should be more than one count. We believe that this contention is erroneous because, in fact, there is only one cause of action pleaded in the petition. Essentially, petitioners allege that their rights as beneficiaries under the first trust indenture were violated and infringed upon by virtue of the execution of the second trust indenture. We view this as one cause of action and can see no reason for an amendment to the petition to divide it into more than one count.

Secondly, First Charter National Bank asserts that the petition fails to set forth with specificity the date upon which the various petitioners became owners of their dwelling units in Village 2 and that, therefore, it is impossible for defendant First Charter National Bank, to determine when the rights of the individual petitioners under the trust indenture would have vested and to whom obligations under the said trust, if any, were owed at any particular time. Although we have some difficulty in seeing the relationship between the date on which the beneficiaries took title to their property and any matter of defense, we are satisfied that this is an evidentiary matter and if defendants require this information either to defend the ultimate action or even for preparing their answers, they may secure same by use of discovery: Ramsey v. Harnett, 7 D. & C. 2d 693 (1956); Magdule v. Feather, 44 D. & C. 2d 192 (1968). Obviously, this information is equally as available to Village 2, being the grantor, as to petitioners herein and by virtue of the settlor-trustee relationship of Village 2 and First Charter National Bank, we would assume it is

equally available to First Charter National Bank. Therefore, for this additional reason, we can see no purpose to be gained in requiring petitioners to file an amended petition. See Lentz v. Conestoga National Bank, 56 Lanc. 555 (1959); Levine v. Lerner, 94 Dauph. 484 (1972).

Lastly, First Charter National Bank asserts the failure of petitioners to join an indispensable party. The trust agreement of June 26, 1972, an agreement between Village 2 and First Charter National Bank, provides, inter alia, for the conveyance of all of the real property described therein, being the same property described in the trust agreement of May 27, 1969, to a Pennsylvania corporation identified as Village Services Corporation. It provides that the trustee shall perform such services and take such actions as are necessary in the proper administration of the real property and improvements being conveyed to Village Services Corporation and that the trustee shall hold and manage, for the benefit of the beneficiaries named in the trust instrument, the stock of Village Services Corporation. The agreement provides for the various duties, obligations and emoluments of each of the three parties, to wit, Village 2, First Charter National Bank and Village Services Corporation. Therefore, if petitioners' demand for relief in the nature of a declaration of the invalidity of this document were to be granted, the interests of Village Services Corporation would be directly and seriously affected. Unless all necessary and indispensable parties are parties to the action, a court is powerless to grant relief: Tigue v. Basalyga, 451 Pa. 436 (1973). A party is indispensable where his rights are so connected with the claims of the litigants that no decree can be made between them

without impairing such rights: Reifsnyder v. Pittsburgh Outdoor Advertising Company, 396 Pa. 320 (1959), and Powell v. Shepard, 381 Pa. 405 (1955). Absence of an indispensable party goes to the jurisdiction of the court (Powell v. Shepard, supra), and may be raised on preliminary objections: Tigue v. Basalyga, supra. Therefore, we are satisfied that this preliminary objection is well taken and that Village Services Corporation is an indispensable party to this litigation.

Accordingly, and for the reasons heretofore enumerated, we hereby enter the following

## ORDER

And now, to wit, August 3, 1973, it is hereby ordered, directed and decreed that all of the preliminary objections, with the exception of the assertion of failure to join an indispensable party, are hereby denied, dismissed and overruled, the preliminary objection asserting failure to join an indispensable party is hereby sustained and the petition is hereby dismissed, with leave to petitioners to file an amended petition consistent with the within opinion within 30 days of the date hereof.