552 A.2d 323

Health Group Care Centers, Inc., and Health Group, Inc., Appellants *v.* City of Pittsburgh, a Home Rule Charter Municipality, and The Office of The Treasurer, City of Pittsburgh, Appellees.

Argued October 6, 1988, before Judges BARRY and SMITH, and Senior Judge BARBIERI, sitting as a panel of three.

*Samuel P. Kamin,* with him, *Howard M. Louik, Goldberg & Kamin,* for appellants.

*Ronald H. Pferdehirt,* Assistant City Solicitor, with him, *D. R. Pellegrini,* City Solicitor, for appellees.

OPINION BY JUDGE BARRY, December 28, 1988:

Appellant, Health Group Care Centers, Inc., is owned by Health Group, Inc., and is licensed by the Commonwealth to operate a long term nursing facility. In 1983 appellant purchased all of the assets of Negley House, Inc., owner of a nursing home in the City of Pittsburgh (City). In 1984 the Treasurer of the City mailed to appellant a notice of deficiency assessment of realty transfer tax for taxes due from the sale of the nursing home. Appellant requested a Treasurer's hearing to challenge the assessment. A hearing was held with the Treasurer represented by the Office of the City Solicitor.

After the hearing the Treasurer issued a decision affirming the assessment with a slight change in appellant's favor. The Treasurer determined that the total consideration passing under the stock purchase agreement was $6,045,267.00, consisting of $3,145,000.00 on the unpaid balance of the mortgage, $280,000.00 in negative working capital, and $2,620,267.00 for purchase of the stock. The Treasurer permitted appellant to take deductions of $670,000.00 for notes receivable and moveable equipment and $1,000,000.00 for good will.

The value of the real property interest transferred was therefore $4,375,267.00. The transfer tax computed was 1.5 percent of this figure or $65,629.01, plus interest and penalty.

Appeal was filed with the Court of Common Pleas of Allegheny County and a hearing was held. After the hearing appellant filed a motion to supplement the record in order to offer into evidence documents which appellant had failed to offer at the Treasurer's hearing. The motion was denied and the decision was affirmed. Appeal was taken to this Court.

The City enacted four ordinances in 1981 and 1982 which amended the City Code to specify that stock purchases would be taxed as realty transfers when over 50 percent of the corporate assets were in the form of real estate.[1] One of the ordinances also added a one-half percent tax to such transfers to bring the total tax to 1.5 percent. Appellant argues that the enactment of these ordinances violated Article III, Section 3 of the Pennsylvania Constitution, which requires that the subjects of bills be clearly expressed in their titles. Appellant also argues that the enactment violated the Local Tax Enabling Act (LTEA)[2] and the City's Home Rule Charter in that proper notice was not given to the public before the ordinances were passed. After the trial court hearing appellant attempted to supplement the record with the advertisements the City placed in the local newspapers before the ordinances were passed, and appellant now argues that the trial court erred by denying the motion to supplement the record.

Our response to these arguments is founded upon 42 Pa. C. S. §5571(c)(5) which reads:

Questions relating to an alleged defect in the process of enactment or adoption of any ordi-

[1] Chapters 255 and 256 of the Pittsburgh Code.

[2] Act of December 31, 1965, P.L. 1257, *as amended,* 53 P.S. §§6901-6924.

nance, resolution, map or similar action of a political subdivision shall be raised by appeal commenced within 30 days after the effective date of the ordinance, resolution, map or similar action.

As the City correctly points out, this section prevents appellant's challenge of the ordinances based on improper notice or defective subject in the ordinance since these arguments were raised several years after the effective date of the ordinances and relate to the process of enactment.

The next argument made by appellant is that municipalities may impose a realty transfer tax only to the extent that the Commonwealth imposes such a tax under Section 17 of the Act of July 2, 1986, P.L. 38, 72 P.S. §8101-D and that the Commonwealth's tax is not triggered until more than 90 percent of a corporation's assets are real estate. We need not examine the Commonwealth's taxing mechanisms because Section 17 of the Act of July 2, 1986 goes on to state the following:

In addition, such political subdivision may impose a local real estate transfer tax upon additional classes or types of transactions if the tax was imposed by the political subdivision under the act of December 31, 1965 (P.L. 1257, No. 511), known as 'The Local Tax Enabling Act,' prior to the effective date of this article.

72 P.S. §8101-D. This section was enacted in 1986 and the City's tax was enacted several years prior. The tax is therefore not prohibited by this section. Appellant nevertheless argues that the tax is not upon a different class or type of transaction because it is still a real estate transfer tax. This argument is without merit. If all real estate transfer taxes were taxes upon the same classes or types of transactions the above quoted language would be meaningless.

Appellant next challenges the constitutionality of the tax ordinances. Before we address these arguments, we must note that we do not accept the City's argument that this challenge, since it was made several years after the enactment of the ordinances, is barred by laches. The City cites *Jones v. Oxford School District*, 3 Pa. Commonwealth Ct. 102, 281 A.2d 188 (1971), in support of this proposition. In *Jones* a taxpayer knew about the imposition of a tax but took no action challenging the tax for quite some time. The court in that case noted that there must be a "want of due diligence" in bringing an action to argue that laches should apply. There is no evidence of want of due diligence here and, in fact, appellant could not be expected to challenge the tax until it was assessed against it.

Having said that, we find very little merit in appellant's constitutionality arguments. Appellant argues that taxing only corporations with more than 50 percent of their assets in the form of real estate is not a rational classification and therefore violates equal protection. We disagree. The City's classification is substantially related to its purpose of taxing purchases of the stock of corporations which are primarily real estate transfers.

Appellant also states that the ordinances are vague in that they do not differentiate between corporations which own assets outside the City and those that own assets only in the City. We find no vagueness here. Chapter 255 of the Pittsburgh Code, subsection 255.01 (d), *as amended,* defines "real property interest" as "specifically including shares of stock in a corporation, the major part (*i.e.,* more than 50%) of whose assets is composed of real estate." Since this definition doesn't limit the City's examination of assets to those within the City, all of a corporation's assets will be taken into account in determining whether a real property interest has been transferred. Subsection 255.02(a) states that a

tax is "imposed upon each transfer of any interest in real property situated within the City." Only the value of the real estate located within the City's borders is therefore subject to the tax.

Appellant next attacks the legality of examining assets located outside of the city when deciding whether to tax a stock purchase. We note that the City did not look beyond its boundaries in the present case. Appellant argues that such a method of triggering a tax violates Section 2 of the LTEA, 53 P.S. §6902 and cites the case of *Borough of Brookhaven v. Century 21*, 57 Pa. Commonwealth Ct. 211, 425 A.2d 466 (1981), as support for this proposition. We can find nothing in *Brookhaven* which would prohibit examination of assets outside of the city. That case holds only that the property subject to the tax be in the city and the borough there was attempting to tax services performed outside of its borders.

*Philadelphia Appeal*, 383 Pa. 428, 119 A.2d 205 (1956), is cited for the proposition that a transfer of real property within a municipality cannot be taxed if the actual transfer of documents took place outside of the municipality, yet appellant never discusses where the present transfer took place. We need not answer that question, for *Philadelphia Appeal* was decided under the old Sterling Act. Section 2 of the LTEA specifically allows the taxing of transfers of real property where the transactions transferring such property take place outside of the municipality. 53 P.S. §6902.

The City Solicitor's office was responsible for drafting the ordinances imposing the tax. During the Treasurer's hearing, counsel for appellant expressed his objection to the Solicitor's office representing the Treasurer because of his fear that the Solicitor would be advising the Treasurer as to the interpretation of the ordinances (Notes of testimony, October 8, 1984, 8-10). Ap-

pellant argues that this situation represents an improper commingling of prosecutorial and adjudicatory functions which prevented the operation of due process. This argument is based on case law which holds that advisory roles are adjudicative in nature. *Pennsylvania Human Relations Commission v. Thorp, Reed & Armstrong*, 25 Pa. Commonwealth Ct. 295, 361 A.2d 497 (1976).

We first note that there is no evidence that the Solicitor actually gave any opinion concerning the ordinance to the Treasurer. Even if he did, however, there would be no impermissible commingling based on our holding in *Board of Pensions and Retirement v. Schwartz*, 97 Pa. Commonwealth Ct. 539, 510 A.2d 835 (1986), *petition for allowance of appeal granted*, 513 Pa. 637, 520 A.2d 1387 (1987).[3] In *Schwartz* the Board suspended appellee's pension benefits after receiving a legal opinion from an individual in the Philadelphia City Solicitor's office which advised the Board that such action would be proper under the applicable ordinance. The same individual who drafted the legal opinion acted as prosecutor at the Board hearing convened to consider the suspension. Even though the same person performed these two functions, this Court found no improper commingling had occurred since the prosecutor had given a purely legal opinion in interpreting the ordinance and had not affected the fact finding process. There is simply no evidence in this case to suggest that the Solicitor has affected the fact finding process.

Appellant's last argument is that the Treasurer's decision is not supported by substantial evidence. Appellant states that it is impossible to determine from the

---

[3] The Commonwealth Court order in *Schwartz* reversed the trial court and remanded for consideration of additional issues which Schwartz had raised in his original appeal. After allocatur was granted the Supreme Court, in an unreported order at No. 5 E.D. Appeal Docket 1987, similarly remanded to the trial court.

record what percentage of Negley House's assets is in the form of real estate. This argument has no merit because the primary purpose of the Treasurer's hearing was to determine the value of the real property interest transferred in relation to the total value of the sale and the Treasurer did just that. Appellant also argues that the Treasurer's refusal to grant deductions for a first mortgage, medical records, and policies and procedures was not supported by substantial evidence. As the City points out in its brief, and as appellant admits, the only evidence in support of the proposed values for these items was the testimony of appellant's president. Appellant presented no appraisals or other documentation corroborating the president's testimony. In Finding of Fact No. 16 of the Treasurer's Adjudication, the Treasurer found that the values of these items had not been established by substantial evidence and that they are of uncertain value outside of the narrow scope of appellant's internal bookkeeping function. A Treasurer's hearing is an action before a local agency. *Aronson v. City of Pittsburgh,* 86 Pa. Commonwealth Ct. 591, 485 A.2d 890 (1985). A local agency, as fact finder, is in a better position than the court to pass upon elements of fact dependent upon oral testimony, and this court may not substitute its judgment for that of the agency. *Gallagher v. Civil Service Commission of the City of Philadelphia,* 16 Pa. Commonwealth Ct. 279, 330 A.2d 287 (1974).

For the foregoing reasons, we affirm the order of the trial court which affirmed the decision of the Treasurer of the City of Pittsburgh.

## ORDER

Now, December 28, 1988, the order of the Court of Common Pleas of Allegheny County, dated November 25, 1987, at No. S. A. 252 of 1985, is affirmed.